## H. B. GLOVER CO. v. BLADINE, Collector of Internal Revenue.

Circuit Court of Appeals, Eighth Circuit.
August 26, 1929.

No. 8452.

James F. Ryan, of Dubuque, Iowa (Hurd, Lenehan, Smith & O'Connor, of Dubuque, Iowa, on the brief), for appellant.

Ralph E. Smith, Sp. Atty., Bureau of Internal Revenue, of Washington, D. C. (Bennett E. Rhinehart, U. S. Atty., of Anamosa, Iowa, and C. M. Charest, Gen. Counsel, Bureau of Internal Revenue, of Washington, D. C., on the brief), for appellee.

Before BOOTH, Circuit Judge, and SANBORN and DEWEY, District Judges.

BOOTH, Circuit Judge. This is an appeal from a judgment of the District Court dismissing a complaint in an action at law brought by the Glover Company against the collector of internal revenue to recover moneys claimed to have been paid in excess for income and profits taxes for the fiscal year ending November 30, 1918.

A written stipulation waiving a jury was duly signed and filed. The facts, largely stipulated, are briefly as follows:

The company was a manufacturer and jobber of wearing apparel. On March 15, 1919, the company filed a tentative tax return for the fiscal year adopted by it, ending November 30, 1918. On June 15, 1919, pursuant to extensions granted by the collector, the company filed a completed return. It, at the same time, filed a claim for abatement of the taxes in the sum of $87,460. This claim for abatement was made pursuant to the provisions of section 234(a)(14) of the Revenue Act of 1918 (40 Stat. 1079). Plaintiff furnished the bond required by subdivision (14) and paid the taxes, less the amount for which abatement was asked. The claim for abatement was based upon the ground that there had been a shrinkage of inventory value. The company made its inventory as of November 30, 1918, on the basis of cost or market, whichever was lower, in accordance with the regulations of the United States Treasury Department, and the inventory showed a value of $686,643. Between November 30, 1918, and April 1, 1919, there was a decline in market values of many of the items contained in the inventory. April 15, 1919, the company revalued its inventory at cost or market, whichever was lower; and the value of the inventory as of April 15, 1919, was found to be $578,265, or a reduction of $108,378 of the former inventory value.

Between December 1, 1918, and February 1, 1919, plaintiff's gross sales of merchandise were as follows:

| | |
|---|---|
| December, 1918 | $ 97,479 71 |
| January, 1919 | 245,546 65 |
| Total | $343,026 36 |

In its claim for abatement the company stated:

"We have sustained a loss of $108,378.09 resulting from a reduction of the value of our inventory for the taxable year which (in our case) ended on November 30, 1918. At that time we took our inventory, as always, at cost or market price whichever was lowest. In many cases we did not know the market prices and could not get them. In such cases we used cost prices. Shortly thereafter quotations of lower prices began to arrive and continued for a long time, each successive quotation being lower than the last. Our re-

valuation is as of April 15, 1919. Prices receded still further after date named."

No claim was made or is now made by plaintiff that it sustained a loss through the sale of its inventory, nor due to depreciation on the portion of the inventory on hand at November 30, 1919; that is to say, "plaintiff makes no claim that it sold or disposed of the inventory of November 30, 1918, for less than the amount of said inventory as agreed upon, nor that the portion of said inventory on hand on November 30, 1919, was of a lower market value on that date than it was on November 30, 1918." In making the revised inventory as of April 15, 1919, those items only were revised on which could be established a market price lower than that of November, 1918. There were 5,800 items in the original inventory. Of these only 1,650 were revised as to value in April, 1919.

The claim for abatement was eventually disallowed, although some minor adjustments were made. Thereafter plaintiff paid under protest the amount demanded, principal and interest, and later, its claim for refund having been rejected, brought the present suit. The court found the facts in accordance with the stipulation of facts filed, and adopted the same. It further found that plaintiff had not sustained a substantial loss resulting from any material reduction (not due to temporary fluctuation) of the value of its inventory for the taxable year 1918. This last finding was referred to by the court as a finding of ultimate fact. Judgment was entered dismissing plaintiff's petition. The present appeal followed.

The main question to be determined is whether the findings of the court sustain the judgment of dismissal. This inquiry resolves itself into two others: (1) Do the findings show that plaintiff sustained a substantial loss resulting from a material reduction of the value of its inventory for the taxable year 1918, within the meaning of section 234(a)(14) of the Revenue Act of 1918? (2) Do the findings show that the reduction in inventory value, if there was such, was not due to temporary fluctuation within the meaning of the same statute?

The section of the statute in question reads as follows:

"Sec. 234. (a) That in computing the net income of a corporation subject to the tax imposed by section 230 there shall be allowed as deductions:

\* \* \* \* \* \*

"(14) (a) At the time of filing return for the taxable year 1918 a taxpayer may file a claim in abatement based on the fact that he has sustained a substantial loss (whether or not actually realized by sale or other disposition) resulting from any material reduction (not due to temporary fluctuation) of the value of the inventory for such taxable year, or from the actual payment after the close of such taxable year of rebates in pursuance of contracts entered into during such year upon sales made during such year. In such case payment of the amount of the tax covered by such claim shall not be required until the claim is decided, but the taxpayer shall accompany his claim with a bond in double the amount of the tax covered by the claim, with sureties satisfactory to the Commissioner, conditioned for the payment of any part of such tax found to be due, with interest. If any part of such claim is disallowed then the remainder of the tax due shall on notice and demand by the collector be paid by the taxpayer with interest at the rate of 1 per centum per month from the time the tax would have been due had no such claim been filed. If it is shown to the satisfaction of the Commissioner that such substantial loss has been sustained, then in computing the taxes imposed by this title and by title III the amount of such loss shall be deducted from the net income. (b) If no such claim is filed, but it is shown to the satisfaction of the Commissioner that during the taxable year 1919 the taxpayer has sustained a substantial loss of the character above described then the amount of such loss shall be deducted from the net income for the taxable year 1918 and the taxes imposed by this title and by title III for such year shall be redetermined accordingly. Any amount found to be due to the taxpayer upon the basis of such redetermination shall be credited or refunded to the taxpayer in accordance with the provisions of section 252."

Other relevant sections are:

"Sec. 227. (a) That returns shall be made on or before the fifteenth day of the third month following the close of the fiscal year, or, if the return is made on the basis of the calendar year, then the return shall be made on or before the fifteenth day of March. The Commissioner may grant a reasonable extension of time for filing returns whenever in his judgment good cause exists and shall keep a record of every such extension and the reason therefor. Except in the case of taxpayers who are abroad, no such extension shall be for more than six months." 40 Stat. 1075.

"Sec. 241. (a) That returns of corporations shall be made at the same time as is

provided in subdivision (a) of section 227." 40 Stat. 1082.

Regulations 45, articles 264 and 265, deal with the same matter. They read as follows:

"Art. 264. *Loss Where Goods have been Sold.*—Where goods included in the inventory at the end of the taxable year 1918 have been sold during the succeeding taxable year, the loss which may be deducted from net income for the taxable year 1918 is the amount by which the value at which the goods sold were included in the inventory exceeds the actual selling price minus a reasonable allowance for selling expenses and for manufacturing expenses, if any, incurred in the taxable year 1919 and attributable to such goods.

"Art. 265. *Loss Where Goods have Not been Sold.*—Where goods included in the inventory at the end of the taxable year 1918 have not been sold during the succeeding taxable year, the loss which may be deducted from net income for the taxable year 1918 is the amount by which the net income for such year would be reduced if the inventory were redetermined and such goods taken at their market value (ignoring mere temporary fluctuations of value) at the end of the taxable year 1919."

We are met at the outset by the contention of appellee that the principal assignment of error which challenges the finding of the court that "plaintiff has not sustained a substantial loss resulting from any material reduction (not due to temporary fluctuation) of the value of its inventory for the taxable year 1918" as not supported by the evidence, cannot be considered on this appeal, for the reason that no special findings were requested by plaintiff, nor was a declaration of law asked, nor was a motion made for judgment in its favor. This objection by appellee would be well taken if the finding mentioned were a pure finding of fact. Federal, etc., Bank v. L'Herisson (C. C. A. 8) 33 F.(2d) 841, and cases cited.

But we are of the opinion that, though the finding was designated by the court below as a finding of ultimate fact, in substance and effect it was a conclusion of law, or at least was a mixed finding of law and fact, since it involved the construction of the statute above quoted. We think the question sought to be reviewed comes within such cases as Federal, etc., Bank v. L'Herisson, supra, and others therein cited, to the effect that the question whether findings of fact support the conclusion of law is reviewable.

As to the construction of the statute, section 234(a)(14), plaintiff contends:

"The plain language of the statute de-clares that the loss shall be measured after the end of the taxable year and prior to the time of filing the return. In other words, Congress provided relief for taxpayers for the year 1918 by allowing revaluation of 1918 inventories at time of filing returns during the following spring of 1919, if the taxpayer would proceed to make revaluation of his closing 1918 inventory on the basis of prices prevailing at time of such revaluation."

As to subdivision (b) of (14) plaintiff contends:

" * * * But careful reading of this subdivision (b) will disclose that the same measure of loss is applicable whether claimed at the time return is filed or later in the year. Only one measure of loss was provided for and that to be fixed by redetermination of the value of the 1918 inventory within the period allowed for the filing of returns for the year 1918."

We cannot agree with this construction of the statute contended for by plaintiff. Section 234(a)(14) was intended as a relief measure. This is apparent both from the wording of the section and from the debates in Congress which accompanied its enactment. The broad purpose was to give relief from deflation of inventory values which it was thought would occur as a result of the ending of the World War. The returns for the year 1918 would be based normally upon the inventory of that year. But when the taxes for that year should become payable the inventory values would, it was thought, show marked shrinkage. The relief provided by section 234(a)(14) was a revaluation of the inventory which had been taken at the close of the year 1918, and a redetermination of the income and the resulting tax. The important question is: What period of time did Congress intend should be considered in determining the shrinkage in inventory value of 1918? The revenue bill as passed by the House contained no inventory loss relief provision. In the Senate an amendment was passed, reading as follows:

"If it is shown to the satisfaction of the Commissioner that during the taxable year 1919 or 1920 the taxpayer (a) has for the first time ascertained the amount of the loss sustained during the preceding taxable year and not deducted from the gross income therefor, or (b) has sustained a substantial loss (whether or not actually realized by sale or other disposition), resulting from any material reduction (not due to temporary fluctuation) of the value of the inventory for the preceding taxable year, then the amount

of such loss shall be deducted from the net income for such preceding taxable year, and the taxes imposed by this title and by title III for such year shall be redetermined accordingly. Any amount found to be due to the taxpayer upon the basis of such redetermination shall be credited or refunded to the taxpayer in accordance with provisions of section 252."

It is apparent from this proposed amendment that it was thought that shrinkage in inventory value might occur at any time during 1919 or 1920, and it was the plan to give relief from such shrinkage. In conference, however, the proposed amendment was modified to the form now contained in section 234(a)(14). This subsection, considered as a whole, made two important changes in the Senate amendment: First, relief from the shrinkage of inventory value was limited to such as might occur prior to the end of 1919; second, two optional methods of procedure were afforded to the taxpayer. He might either file a claim in abatement of a part of his tax at the time when he made his return, and omit payment of the amount of the tax covered by such claim, or he might wait until the end of the taxable year 1919 and put in a claim for refund. If he pursued the former method, the taxpayer must accompany his claim with a bond conditioned for the payment of any part of the tax included in the claim found to be due, with interest. He would thus have the benefit of the use of the amount of money involved in the claim in abatement until the claim was decided, and, if the claim was decided adversely, he would simply have to pay the amount with interest, but without penalty. This, of course, might be of material benefit to the taxpayer. But whether he pursued the first or the second method, the determination of the amount of shrinkage of inventory value was not to take place until the close of the year 1919.

There are several reasons why we place this construction upon section 234(a)(14): First, it gives a full year, instead of 2½ months for the play of economic forces in determining whether a reasonably permanent shrinkage in inventory value has taken place, as distinguished from a mere temporary fluctuation. Second, it provides a certain instead of an uncertain date for the determination of such shrinkage; although the statute provided for the filing the claim in abatement at the time of filing the return for the year 1918, and the final date of normal return was March 15th, yet returns could be filed on any date between January 1st and March 15th; further, the Commissioner of Internal Revenue was authorized for good cause shown to extend the time for filing a return for a period not to exceed six months; still further, the statute did not fix the date of revaluation of the inventory which is to be the basis of the claim in abatement, but left it optional with the taxpayer to select any date prior to the date of filing his return; in the instant case the taxpayer selected April 15, 1919, as the date for the revaluation of its inventory; this was neither the normal date for filing returns, nor the date for filing its own return normally, nor the date on which its return was actually filed, but a purely arbitrary date; this elasticity of date for making revaluation of inventory was of no importance if the revaluation was tentative only, but would be of material importance if the revaluation was final. Third, the construction we have placed upon the statute puts the taxpayers who adopt the first method of procedure and those who adopt the second upon a basis of equality for determining shrinkage in their inventory values. Fourth, the construction which we have given to the statute is in accord with the rulings of the Treasury Department (T. B. 18–21–1609); with the construction given by writers on federal taxation (Holmes, Federal Taxes [6th Ed.] 1038); with rulings of the Board of Tax Appeals (Appeal of Carlisle Garment Co., 3 B. T. A. 1119; Kansas City Structural Steel Co. v. Commissioner of Internal Revenue, 11 B. T. A. 877, reversed on another point 33 F.(2d) 53 (C. C. A. 8); and with the broad purpose had in mind by Congress as disclosed by the debates at the time of the passage of the statutory provision under consideration.

Our conclusion is that the judgment below was correct, and it is affirmed.