**DEWEY PORTLAND CEMENT CO. v. CROOKS, Collector of Internal Revenue.**

**No. 9232.**

Circuit Court of Appeals, Eighth Circuit.

March 22, 1932.

Walter J. Carrico, of Tulsa, Okl., and Hale Houts, of Kansas City, Mo. (Henry S. Conrad and L. E. Durham, both of Kansas City, Mo., on the brief), for appellant.

Lester L. Gibson, Sp. Atty., Bureau of Internal Revenue, of Washington, D. C. (William L. Vandeventer, U. S. Atty., and Chet A. Keyes, Asst. U. S. Atty., both of Kansas City, Mo., and C. M. Charest, Gen. Counsel, Bureau of Internal Revenue, of Washington, D. C., on the brief), for appellee.

Before STONE and BOOTH, Circuit Judges, and WYMAN, District Judge.

BOOTH, Circuit Judge.

This is an appeal from a judgment in favor of the defendant in an action at law brought by the plaintiff-appellant to recover income and profits taxes claimed to have been illegally collected from the plaintiff for the year 1918.

The suit was based upon the ground that the plaintiff had suffered a loss during the year 1919 as a result of payment of rebates during 1919; that these rebates arose from contracts made in 1918; and that therefore the tax liability of the plaintiff for 1918 should be redetermined in accordance with section 234 (a) (14) of the Revenue Act of 1918, 40 Stat. 1077 (quoted below).

The payments made by plaintiff during 1919, and claimed to be payments of rebates, were made in connection with the sale of cement by it, the contracts of sale containing the following provision: "Sacks. The price named includes the sacks in which the cement is to be shipped. Cloth sacks of Dewey Brand delivered hereunder will be repurchased subject to the seller's inspection and count, at twenty-five cents each if returned promptly in serviceable condition at Dewey, Oklahoma. Sacks that have been wet or are worthless will not be repurchased."

This agreement, but with the amount stated at 10 cents instead of 25 cents, had been in use for many years prior to September 16, 1918, when the price was raised to 25 cents.

In 1918 the appellant carried accounts to reflect the payment of this 25 cents for each bag returned; and also to show the amounts

collected from the various customers for the bags received by them.

Plaintiff's method of entering the transactions on its books is thus described:

"Plaintiff recorded the transactions upon its books by charging its customer with the price of the 'cement including sack,' crediting ten cents to 'Sack Inventory' account and crediting the balance to 'Cement Sales' account. When sacks were returned an entry was made debiting 'Sack Inventory' account with ten cents for each sack and crediting the customer a like amount.

"Beginning with September 16, 1918, however, the price mentioned in the contract was raised from ten cents to twenty-five cents and new accounts were opened by plaintiff to reflect the liability to pay twenty-five cents each upon the return of sacks which were carried upon the books at ten cents each. The new accounts consisted of one designated 'Sack Redemption Fund' and another designated 'Sacks in Hands of Customers.' Upon the sale of cement, beginning with September 16, 1918, a charge was made to the customer for the full contract price of 'cement including sack' and a credit made to the 'Sack Redemption Fund' account of twenty-five cents for each sack delivered, the balance being credited to 'Cement Sales' account. An additional entry was made debiting 'Sacks in Hands of Customers' account with ten cents for each sack delivered and crediting 'Sack Inventory' account a like amount. Upon the return of sacks the customer was credited with twenty-five cents for each sack returned and a corresponding debit made to the 'Sack Redemption Fund' account. Additional entry was also made debiting 'Sack Inventory' account with ten cents for each sack returned and crediting a like amount to 'Sacks in Hands of Customers' account."

These accounts showed that for the year ending December 31, 1918, the plaintiff was ahead to the extent of $78,026; that is to say, it had received from its customers for the bags, at 25 cents each, $78,026 more than it had paid out to its customers for the return of the bags; but many bags were still in the hands of customers. This $78,026, however, was not returned by the plaintiff as part of its income for the year 1918. In 1924 the Commissioner made an additional assessment against the plaintiff for the year 1918 based upon this amount of $78,026. This additional assessment was paid by the plaintiff; and on October 3, 1927, it filed a claim for refund, making a showing that about $58,000 had been paid out in 1919 for bags returned. Refund was denied; and the present suit was brought.

The statute upon which plaintiff relies, being section 234 (a) (14) of the Revenue Act of 1918, reads as follows, so far as here material: "(14) (a) At the time of filing return for the taxable year 1918 a taxpayer may file a claim in abatement based on the fact that he has sustained a substantial loss (whether or not actually realized by sale or other disposition) resulting from any material reduction (not due to temporary fluctuation) of the value of the inventory for such taxable year, or from the actual payment after the close of such taxable year of rebates in pursuance of contracts entered into during such year upon sales made during such year. In such case payment of the amount of the tax covered by such claim shall not be required until the claim is decided. * * * (b) If no such claim is filed, but it is shown to the satisfaction of the Commissioner that during the taxable year 1919 the taxpayer has sustained a substantial loss of the character above described then the amount of such loss shall be deducted from the net income for the taxable year 1918 and the taxes imposed by this title and by Title III for such year shall be redetermined accordingly. Any amount found to be due to the taxpayer upon the basis of such redetermination shall be credited or refunded to the taxpayer in accordance with the provisions of section 252."

In other words, plaintiff relies upon the provision for a refund where the taxpayer has "sustained a substantial loss * * * resulting * * * from the actual payment after the close of such taxable year of rebates in pursuance of contracts entered into during such year upon sales made during such year."

A jury was waived, and the case was tried to the court. Judgment was entered in favor of the defendant.

The main question involved is whether the payments made by the plaintiff to its customers on the return of sacks sold to them under contracts with them were rebates within the meaning of the statute.

It is to be noted that the plaintiff did not comply with the statute and the regulations governing rebates in making its return for the year 1918. We assume that this does not preclude the present suit; yet it apparently indicates that it was not until after the Commissioner had assessed a tax based up-

on the omitted income item of $78,026 that the idea of rebates arose.

■ In denying the claim for refund, the Commissioner stated his view of what constituted "rebates" within the meaning of the section quoted. He said: "In the opinion of this office, section 234 (a) (14), Revenue Act of 1918, is not applicable to the instant case. The word 'rebates', as used in that section, is held to mean remissions or allowances due to price adjustments, changes in prices, and other similar adjustments made in pursuance of agreements entered into during the year 1918." We think that this definition given by the Commissioner is substantially correct.

Webster's International Dictionary gives this definition: "Rebate.—Deduction; abatement; remission or payment back."

Bouvier, vol. 3, p. 2819, gives this definition of "rebate": "In Mercantile Law. Discount; the abatement of interest in consequence of prompt payment. An allowance by way of discount or drawback."

6 Words and Phrases, Third Series, page 588, defines "rebate" as follows: "The word 'rebate' is defined as an allowance by way of discount or drawback; a deduction from a gross amount; deduction; abatement; remission or payment back, as, a rebate of interest for immediate payment; a rebate of freight charges; discount; the abatement of interest in consequence of prompt payment; an allowance by way of discount or drawback; deductions from stipulated premiums allowed in pursuance of antecedent contract."

From these various definitions, and from the language of the statute read in the light of the circumstances surrounding the enactment, we are of the opinion that the concept of a rebate, as disclosed by the statute, is something returned to the purchaser out of the purchase price for the purpose of bringing about a reduction in the purchase price.

■ In the case at bar, there was simply a sale of the bags to the purchaser at 25 cents each, and an agreement for repurchase at the same price. This, in our opinion, did not constitute a rebate. The provision in the statute as to rebates did not have in view any such transactions as repurchasing by a seller.

It has been held by this court in H. B. Glover Co. v. Bladine, 34 F.(2d) 605, 607, that the broad purpose of the statute, section 234 (a) (14) of the Revenue Act of 1918, was "to give relief from deflation of inventory values which it was thought would occur as a result of the ending of the World War." That case involved alleged loss of inventory values, and the language used in the opinion had particular reference to the facts alleged. But the broad purpose of the statute also included relief to those who desired to make sales of their goods, but were hindered because of the anticipated fall in prices. A rebate clause in the contracts of sale would remove the hindrance; and relief would be afforded the seller for rebates actually paid in 1919 pursuant to contracts made in 1918 upon sales made in that year. The two forms of relief were not identical, but were closely related.

In Holmes Federal Taxes (6th Ed.) p. 1038, the author states: "Rebates made during the taxable year 1919 on sales made during such year (provided the goods to which the rebate applied were included in the inventory at the close of the taxable year 1918) were considered as an adjustment of sales values in arriving at the loss on inventories for the taxable year 1918. This item could not go in the rebate claim, but the rebate might be considered in determining the sale price for the purpose of determining an inventory loss." See Henningsen Produce Co. v. Commissioner, 59 App. D. C. 191, 37 F.(2d) 821. For a case somewhat similar to the case at bar, see Appeals of LaSalle Portland Cement Co., 4 B. T. A. 438.

The contention of plaintiff that the 25 cents per sack for each sack returned was in fact a refund upon the entire purchase price of the cement is, we think, without merit.

It is to be noted that the title to the sacks passed to the purchaser of the cement, and that he was under no obligation to return them; and that plaintiff's liability to repurchase the sacks was subject to two contingencies: First, that the purchaser of the cement saw fit to return the sacks; second, that the sacks were usable and acceptable.

It is to be noted, further, that neither in the contracts between plaintiff and its customers, nor in the entries on its books, is any mention made of rebates.

The bags were merchandise bought by the plaintiff, and sold by the plaintiff to its customers, and repurchased by the plaintiff from its customers. If they had not been returned, the plaintiff would have been obliged to purchase other bags in the market. We think the transactions in question

502

did not involve rebates within the proper construction of the statute invoked.

The judgment of the court below is af-firmed.