### GEORGE S. ALLEN *vs.* COMMONWEALTH.

Worcester.    February 23, 1904. — May 17, 1905.

Present: KNOWLTON, C. J., MORTON, LATHROP, BARKER, HAMMOND, LORING, & BRALEY, JJ.

*Damages.    West Boylston.    Words,* "Business", "Established business."

The owner of a farm in West Boylston of about fifty acres, which has been the only means of livelihood for himself and his family, who for many years has carried on the business of farming by selling the surplus produce of his farm to persons in the village of Oakdale in the town of West Boylston, although he has had no regular route or customers and nothing in the nature of a good will, may be found by the commissioners appointed under St. 1895, c. 488, to have owned "an established business on land in the town of West Boylston" within the meaning of the provisions of § 14 of that statute.

PETITION, filed in the Supreme Judicial Court for the County of Worcester on May 15, 1903, under St. 1895, c. 488, § 14, for the determination of damages, alleging that on April 1, 1895, the petitioner owned an established business on land in the town of West Boylston, which was decreased in value and destroyed by the carrying out of St. 1895, c. 488, and that the petitioner was unable to agree with the board of commissioners appointed under that act as to the amount of damages to be paid for such injury.

The commissioners made a report stating the facts which appear in the opinion, and finding, that, if on the facts reported the petitioner owned an established business on land within the meaning of the act, such business was damaged and decreased in value by the carrying out of the act in the sum of $150.  Otherwise the commissioners found for the Commonwealth.

The case came on to be heard upon the report of the commissioners before *Hammond*, J., who reserved it for determination by the full court of the question whether upon the facts set forth in the commissioners' report it was competent for them to find that the petitioner had an established business within the meaning of St. 1895, c. 488, § 14.

The case was submitted on briefs at the sitting of the court in

February, 1904, and afterwards was submitted on briefs to all the justices.

*J. S. Lynch,* for the petitioner.

*R. A. Stewart,* Assistant Attorney General, *& F. T. Field,* for the Commonwealth.

MORTON, J. The question in this case is whether the petitioner owned "an established business on land" within the meaning of St. 1895, c. 488, § 14. So much of the section as is material is as follows: "In case any individual or firm owning on the first day of April in the year eighteen hundred and ninety-five an established business on land in the town of West Boylston, whether the same shall be taken or not under this act, . . . shall deem that such business is decreased in value by the carrying out of this act, whether by loss of custom or otherwise, and unable to agree with said board as to the amount of damages to be paid for such injury, such damages shall be determined" etc.

The petitioner owned on April 1, 1895, and had owned for a good many years, a small farm in West Boylston, consisting, it is said, of about fifty acres, which he carried on, and on which he lived and supported himself and family. He had no other business. He raised hay, grain, apples and vegetables but not in large quantities, and kept a cow, a horse, some hens, and a few hogs and made each year a few barrels of cider from apples raised on the farm. The hay that was not consumed, and the eggs, vegetables, cider and milk that were not required for the support of the family were sold in the village of Oakdale in West Boylston, and he occasionally sold a hog to the local butcher. He had no regular route or customers for the sale of the hay, eggs, vegetables, milk and cider. It does not appear, and is perhaps not material, of how many persons his family consisted, nor how much hay and other produce or how many eggs and hogs he sold. The village of Oakdale was destroyed by the construction of the reservoir, and the petitioner brings this petition to recover the damages thereby caused to his business.

The act under which the petition is brought is entitled, "An Act to provide for a Metropolitan Water Supply," and provides for the construction of a reservoir, the effect of which will be to submerge certain towns and villages and to destroy a large

amount of property and to interfere very seriously with, if not destroy, in many cases business.   Ordinarily the damage done to a person's business by the exercise of the right of eminent domain is not a matter for which he is entitled to compensation. But in the present case the Legislature has shown a disposition to deal liberally with those who would or might be injured by the carrying out of the act.   In addition to providing compensation for real estate taken, and for real estate not taken but directly or indirectly decreased in value, the act provides that in certain cases individuals and firms shall be compensated for damage done to their business whether the land on which it is established is taken or not, and whether the business is decreased in value by loss of custom or otherwise.   By subsequent acts these provisions were extended to the towns of Sterling, Boylston, and the part of Clinton within the limits of the reservoir.   St. 1897, c. 445.   St. 1898, c. 551.   St. 1901, c. 505.   By another act the Legislature went so far as to provide that in certain cases the employees of corporations, partnerships and individuals in West Boylston should be entitled to compensation when thrown out of work by the taking of the property of their employers under the act.   St. 1896, c. 450.   The purpose of the Legislature to deal liberally with those affected by the construction of the reservoir is thus shown and the provisions now before us should be construed in accordance with the intention thus manifested.

The word "business" is of large significance and "denotes the employment or occupation in which a person is engaged to procure a living."   *Goddard* v. *Chaffee,* 2 Allen, 395.   That farming is a business is plain, (*Snow* v. *Sheldon,* 126 Mass. 332,) and there is nothing in the statute that excludes it any more than any other business from its operation.   It is manifest, also, we think, that the petitioner was engaged in the business of farming.   That was the means, and, so far as appears, the only means whereby he procured a livelihood for himself and his family. The more difficult question is whether, as he carried it on, it was "an established business" within the meaning of the statute.   That it was a business "on land in the town of West Boylston" would seem to hardly admit of question.   In this connection it is to be noted that the business of farming as carried on by the petitioner included not only the raising of farm prod-

ucts but the selling of a portion of the same. As a farmer he raised and sold farm products. He had owned and had thus carried on the farm for many years, fifteen it is said in the brief, and so far as he was concerned the business was an established business. It had got beyond the stage of experiment, and had become his settled and only occupation, and for aught that appears furnished a comfortable living for himself and his family. Any element of uncertainty or chance that there may have been about it at any time had disappeared, and he could and did depend on it from year to year for a livelihood for himself and family. If the persons in Oakdale, to whom he sold his surplus produce, had gone to his farm and bought there, or if he had had a shop in the village, there can be no doubt, we think, that he would have had an established business on land in West Boylston within the meaning of the act. It is said, however, that he had no regular route or customers and that there was nothing in the nature of a good will, such as goes, for instance, with a physician's practice; that, in short, there was nothing in the nature of property in the business as carried on by the petitioner and that it was only such cases for which the Legislature intended to provide. But this case would seem to show that there may be an established business without a regular route or regular customers, or anything in the nature of a good will. If these things are present, in any given case, they show, beyond question, that the business is an established business. But the words have no settled meaning (*Ex parte Breull*, 16 Ch. D. 484), and are to be construed with reference to the circumstances of each particular case. The petitioner had been carrying on the same business, in the same locality, and on and from the same farm for fifteen years. How can it be said that the business was not an established business? Presumably the village of Oakdale was a small place and he may have found it more to his advantage to sell where and as he could, than to adhere to a fixed route and regular customers, and so an established relation may have existed between him and the citizens of that village as to the sale of his farm products. It also is to be noted in this connection that by the terms of the act compensation is to be given whether the damage occurs by loss of custom or otherwise. The petitioner's farm was, as said in *Earle* v. *Commonwealth*,

180 Mass. 579, 583, of a doctor's office, the "locally established centre" from which he distributed what he had to sell, and his business could, therefore, be fairly said to have been an established business on land in West Boylston. The fact that he did not raise things in large quantities, or that the farm was a small one has, of course, no tendency to show that the business was not an established business. The Legislature did not mean that every one in the towns of West Boylston, Boylston, Sterling and Clinton who should be injured in his business or occupation by the construction of the reservoir should receive compensation therefor. But by the building of the reservoir certain towns and villages would be altogether destroyed and the inhabitants scattered. Naturally there would be cases in which individuals derived support for themselves and their families in whole or in part from supplying the wants of the people living in the towns and villages that would be thus broken up, and whose business would be very seriously interfered with, if not altogether destroyed. Such cases might well appeal to the consideration of the Legislature, and we think that it was the object of the Legislature to provide for them. By the use of the word "established" it intended to exclude cases where the business had not an element of fixity and permanence, and by the use of the words "on land in the town of West Boylston" to confine the right of recovery to cases which were local in their character. A majority of the court think that the petitioner's case comes within the scope of the statute as thus defined and that he is entitled to recover, and that judgment should be entered in his favor for $150, the amount of the damage found by the commissioners, with interest and costs.

*So ordered.*