HOMER P. MORRIS, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 6510, 6525.   Promulgated January 14, 1928.

*O. H. B. Bloodworth, Jr., Esq.*, for the petitioner.
*Thomas M. Wilkins, Esq.*, for the respondent.

OPINION.·

LANSDON: The petitioner knows nothing of bookkeeping or of the science of accounting. Such records of his business as were considered by the Commissioner in the determination of the deficiencies and penalties here in question or produced at the hearing of this proceeding are no more than fragmentary and inconclusive memoranda from which it is impossible to determine true taxable income and assess tax liability. In the absence of books of account containing a reliable record of the petitioner's business operations, the Commissioner undertook to determine tax liability by taking total bank deposits for each of the years 1917 and 1918 as a basis for computing gross income for such respective years, which he reduced to net income by deducting some amounts known to be nonincome items and others that were either conceded or proved to be proper deductions.

The evidence discloses that the petitioner deposited in certain banks all receipts from the sale of crops, and that he paid practically all his obligations by checking on such banks. If such deposits represented all the elements of gross income and withdrawals all the expenses incurred in the production of such income, it is obvious that the difference between deposits and withdrawals, less nonincome items, statutory credits, exemptions and deductions, would be the petitioner's net taxable income. It is equally obvious that such a situation is all but impossible, since there are likely to be many unidentified deposits of other than income items and many withdrawals for other than crop-production expenses. The Commissioner endeavored to identify and deduct all nonincome deposits, and to allow such deductions and exemptions as are authorized by law, and there is no proof that he did not do so except as to matters in which, upon the record, he appears to have been in error.

For the years 1917 and 1918 the Commissioner reduced the petitioner's payments to share croppers in the respective amounts of

$2,500.20 and $4,303.80, and for the year 1917 disallowed any deduction on account of salary of the petitioner for the management of his farm as provided in section 5 (a) of the Revenue Act of 1917, and specifically authorized in article 39 of Regulations 41. The amounts deducted from the petitioner's payments to croppers, and thereby automatically added to taxable income, are alleged by the Commissioner to represent profits realized by the petitioner from sales of merchandise to his croppers. The evidence does not support this procedure. It was proved at the hearing that the yearly sales of merchandise by the commissary conducted by the petitioner never exceeded $4,000, and that the gross profits from such business were never more than 10 per cent of the turnover. We are satisfied that no net profits were realized from such transactions. In any event, we are unable to see any relation between profits on merchandise sold to the petitioner's share croppers and the amounts due such croppers from the proceeds of the sale of crops produced by them. We hold, therefore, that the respondent overstated the petitioner's income for the years 1917 and 1918 in the respective amounts of $2,500.20 and $4,303.80.

It is not disputed that the petitioner was the manager of a business enterprise that used invested capital in its operations in the amount of $48,906.45, as computed by the Commissioner for excess-profits purposes for 1917. In such circumstances the individual owning and operating such an enterprise is entitled, for excess-profits-tax purposes, to deduct from gross income all ordinary and necessary expenses. In article 39 of Regulations 41, the Commissioner thus applies this provision to individual owners and operators:

An individual carrying on a trade or business having an invested capital may in computing net income of the trade or business, for the purposes of the excess profits tax, deduct a reasonable amount designated by him as salary or compensation for services actually rendered by him in conduct of such trade or business.

The evidence is convincing that the petitioner is a highly competent farm operator, with many years of successful experience; that his gross annual income from his business was large; and that he devoted his entire time " from daylight to darkness " to the enterprise. A witness thoroughly conversant with farming in Georgia and with the nature, quantity, and quality of the crops produced by the petitioner, testified that he considered Morris's services as farm manager worth a minimum of $5,000 in the year 1917. The only reason suggested for disallowance of salary as claimed is that the petitioner lived on the farm, and that the values of the products thereof which he consumed were not returned as income. The Commissioner argues that the value of the farm products consumed by

the petitioner, in all probability, was an adequate payment for the services rendered. We can not assent to this assumption, which we believe has no support in the statutes or the regulations. Products of a farm consumed by the operator thereof and his family do not appear to come within any of the categories of income enumerated in the taxing statutes and the administrative regulations of the Commissioner. To include the value of such products, even if it could be determined, in the deduction allowable for excess-profits-tax purposes to a farmer as compensation would automatically subject such amounts to normal tax and in effect include in income something which Congress did not intend should be so regarded. If products of a farm consumed thereon are income to the producer, it would seem to follow that the rental value of the farmer's home, the gratuitous services of his wife and children, and the value of the power derived from draft animals owned by the farmer and used without cost should also be so considered. It is obvious that such items are comparable to the rental value of a private residence, which has never been regarded as income or as a factor in the determination of tax liability.

The deduction claimed here relates only to excess-profits-tax and is authorized by statute and regulations solely for the purpose of equalizing the tax liability of an individual engaged in a business employing invested capital with that of a partnership or corporation in which compensation for managerial services is an ordinary expense. Whatever amount is so deducted remains in income and is subject to tax at normal rates. We have heretofore held that farming conducted for profit is a business enterprise entitled to all deductions allowed other industrial enterprises in the computation of tax liability. *Sheridan* v. *Commissioner*, 4 B. T. A. 1299; see also *Allen* v. *Commonwealth*, 188 Mass. 59. We are of the opinion that $5,000 is a reasonable salary for the services rendered in the year 1917, and that such amount is a proper deduction from gross income for such year in the computation of income subject to excess-profits tax.

With respect to the deduction from gross income claimed for the year 1919 on account of losses and bad debts, the respondent contends that as the petitioner's taxable income for that year was found by comparing bank deposits with bank withdrawals, such amounts were withdrawn from the bank before they could be advanced to croppers or used in cotton deals on the New York market, and that they have already been allowed in the total of bank withdrawals credited against deposits. This reasoning is sound. On this point we approve the determination of the respondent.

Having disposed of all the questions relating to gross income and deductions therefrom upon which the evidence is sufficient to enable us to reach any sound conclusion, it remains only to discuss and de-

cide the allegations of delinquency and fraud made by the respondent. The penalties imposed are set forth in our preliminary statement, and need not be recounted here. The petitioner contends that as more than five years have elapsed since the penalties, if any, were incurred and as he has signed no waivers in respect thereto, the statute of limitations has run, and that, even if properly predicated on facts and law, such penalties can not now be collected. It is a well established rule of law that the statute of limitations does not run against frauds. This, we believe, disposes of the petitioner's contention as to the 100 per cent and 50 per cent fraud penalties imposed for the years 1917 and 1918, respectively.

The penalty for failure to make an excess-profits-tax return for 1917 was imposed for delinquency. To sustain his contention as to the statute of limitations, the respondent argues that, once having been imposed, such a penalty became a part of the tax, and relies on section 3176 of the Revised Statutes, which expressly provides that "the amount so added to any tax shall be collected at the same time and in the same manner and as a part of the tax." These respective contentions of the parties raise two interesting questions of law, but the record of this proceeding requires no decision on either. The waivers are not in the record. The petitioner, having produced no evidence in support of his contention, has failed to sustain the burden of proof necessary to overcome the presumption that the statute does not bar the respondent from collecting the penalty for delinquency. There is also another factor in this matter, not referred to by either party in evidence or argument, which supports the contention of the respondent. The penalty for delinquency was imposed for failure to make a return. Since the petitioner made no excess-profits-tax return for the year 1917, there is no date from which the statute of limitations begins to run, either against the deficiency or the penalty for delinquency. *Updike* v. *United States*, 8 Fed. (2d) 913.

The petitioner further argues that section 1004 of the Revenue Act of 1917 does not clothe the Commissioner with authority to impose penalties for either delinquency or fraud. This, of course, is correct, since that provision is a penal section which prescribes penalties only after trial and conviction in court. The Commissioner did not impose the penalties in question under section 1004, but under section 3176 of the Revised Statutes, which was incorporated in section 16 of the Revenue Act of 1916, and reenacted as a part of the Revenue Act of October 3, 1917. This section provides as follows:

In case of any failure to make and file a return or list within the time prescribed by law or by the collector, the Commissioner of Internal Revenue shall add to the tax fifty per centum of its amount except that, when a return is

voluntarily and without notice from the collector filed after such time and it is shown that the failure to file it was due to a reasonable cause and not to willful neglect, no such addition shall be made to the tax. In case a false or fraudulent return or list is willfully made, the Commissioner of Internal Revenue shall add to the tax one hundred per centum of its amount.

This excerpt from the statutes disposes of the petitioner's contention that the fraud penalties were imposed without authority of law, but leaves undetermined the legal basis for the 50 per cent penalty for failure to file an excess-profits-tax return for 1917. The excess and war-profits-tax Acts of 1917, for the first time, included invested capital as an element for consideration in computing tax liability. This necessarily involved many new administrative problems that could not, in the circumstances, be written into the law. Congress, therefore, conferred rather large powers on the Commissioner in section 213 of the Act, which is as follows:

That the Commissioner of Internal Revenue, with the approval of the Secretary of the Treasury, shall make all necessary regulations for carrying out the provisions of this title, and may require any corporation, partnership, or individual, subject to the provisions of this title, to furnish him with such facts, data, and information as in his judgment are necessary to collect the tax imposed by this title.

The petitioner, assisted by a deputy collector, made an income-tax return on February 20, 1918. Among other instructions to taxpayers, printed on the form used, was the following:

If your total income from all sources exceeded $6,000 and you received any income from a trade or business with invested capital you should get a copy of the excess profits tax return (Form 1101) and calculate the amount of your tax, if any, as directed therein.

Regulations 41, which contains the provision relating to excess-profits-tax return based on the authority of section 213 of the Revenue Act of 1917, was promulgated not later than February 4, 1918, and therefore was in effect on February 20, when the petitioner made his return on Form 1040. That neither the deputy collector nor the petitioner appears to have known of the requirement for an excess-profits-tax return is not material. The Act authorized the Commissioner to make such a regulation. It had been made, approved by the Secretary, and promulgated, both in Regulations 41 and in income-tax-return Form No. 1040. It was necessary both to safeguard the revenues and to protect taxpayers. It must be presumed that every taxpayer who used Form 1040 was advised of the existence of the regulation and of the penalty that might be imposed for failure to conform to its requirements. It is not disputed that this petitioner failed to make the required return. In the light of the law, the regulations, and of the facts disclosed by this record, we hold that the penalty for delinquency was legally imposed and may be collected in an amount not greater than 50 per cent of the excess-

profits tax, if any, of the petitioner for the year 1917, which shall be determined by recomputation in conformity with this opinion. *Bean* v. *Hamilton*, 289 Fed. 9; *Appeal of J. Hudson McKnight*, 3 B. T. A. 1060.

Penalties of 100 per cent of the income tax determined by the Commissioner for the year 1917, and of 50 per cent for 1918, are also asserted on account of false and fraudulent returns made by the petitioner. After careful consideration of the entire record, we are of the opinion that the petitioner did not willfully and fraudulently understate his income for such years. The penalties for fraud should not be collected.

Reviewed by the Board.

> *Judgment will be entered on 15 days' notice, under Rule 50.*

STERNHAGEN and MURDOCK dissent.