## ROGERS v. UNITED STATES.

### No. H-411.

Court of Claims.

June 2, 1930.

Harry D. Murray, of Washington, D. C., for plaintiff.

Joseph H. Sheppard, of Washington, D. C., and Herman J. Galloway, Asst. Atty. Gen., for the United States.

Before BOOTH, Chief Justice, and WILLIAMS, LITTLETON, and GREEN, Judges.

WILLIAMS, Judge.

The plaintiff in this case sues to recover $2,272.35, which is alleged to be an overpayment of taxes for the years 1922 and 1923.

The plaintiff during the years in question was a practicing physician and surgeon at Clinton, Okl. He had been located at Clinton for several years and enjoyed a lucrative practice in his profession. For approximately 10 years prior to 1921 the plaintiff from time to time invested the surplus income from his profession in stocks and bonds, oils, mining, and real estate.

In October, 1920, he purchased 126¼ shares of stock of the Weatherford Milling Company, an Oklahoma corporation, for which he paid the sum of $36,250. The shares purchased by the plaintiff represented one-quarter of 505 shares in the company purchased by the plaintiff and three copurchasers. After the purchase of these shares by the plaintiff and his associates the milling company became involved in financial difficulties. Heavy obligations had been incurred, and the company was facing bankruptcy. Facing this situation and not being in a position to do the refinancing necessary to put the company on a solvent basis, the plaintiff and his copurchasers, who owned practically all the shares of stock, entered into a contract with J. W. Maney and John Maney, whereby it was agreed the said Messrs. Maney would take over and undertake the operation of the company and assume all outstanding liabilities in return for the surrender of the shares of stock then owned by the plaintiff and his three copurchasers. The said agreement was carried out, and in December, 1922, the plaintiff surrendered to Messrs. Maney the 126¼ shares of stock in the company acquired by him as aforesaid.

The plaintiff in this transaction suffered a total loss of the amount originally paid by him for the said shares, to wit, $36,250.

In his income tax return for the calendar year 1921 the plaintiff deducted the sum of $5,625 of the loss sustained in the aforesaid stock, in his return for the year 1922 he deducted $12,867, and in his return for the year 1923 he deducted $14,516 of such losses.

The Commissioner of Internal Revenue disallowed the deductions for the years 1922 and 1923, and on December 15, 1925, assessed an additional tax against the plaintiff in the sum of $1,992.82. Thereafter, and on May 13, 1926, the said Commissioner made a further assessment against plaintiff in amount of $279.53, covering interest on the aforesaid additional tax.

On June 4, 1926, plaintiff paid to the collector of internal revenue the amount of the aforesaid assessments, totaling $2,272.35, and, on June 12, 1926, filed a claim for refund thereof, which was rejected on August 27, 1926.

The plaintiff claims he was entitled to the deductions taken by him for the years stated by virtue of the provisions of section 204 (a) and (b) of the Revenue Act of 1921 (42 Stat. 227, 231), which reads:

"Sec. 204 (a) That as used in this section the term 'net loss' means only net losses resulting from the operation of any trade or business regularly carried on by the taxpayer (including losses sustained from the sale or other disposition of real estate, machinery, and other capital assets, used in the conduct of such trade or business).  *  *  *

"(b) If for any taxable year beginning after December 31, 1920, it appears upon the production of evidence satisfactory to the Commissioner that any taxpayer has sustained a net loss, the amount thereof shall be deducted from the net income of the taxpayer for the succeeding taxable year, and if such net loss is in excess of the net income for such succeeding taxable year, the amount of such excess shall be allowed as a deduction in computing the net income for the next succeeding taxable year.  *  *  * "

Article 1601 of Treasury Regulations, No. 62 reads:

"1601. Net losses, definition and computation: The term 'net loss' as used in the statute means only a net loss resulting from the operation during the taxable year of any trade or business regularly carried on by the taxpayer. Included therein are losses from the sale or other disposition of real estate, machinery, and other capital assets used in the conduct of such trade or business. In order to be entitled to claim an allowance for a 'net loss' the taxpayer must have suffered an actual net loss in a trade or business during the taxable year.  *  *  * "

The words "trade or business," as used in the statute in connection with losses, has been held by the courts to mean and refer to a regular occupation or calling of the taxpayer for the purpose of livelihood or profit. Flint v. Stone Tracy Co., 220 U. S. 107, 171, 31 S. Ct. 342, 55 L. Ed. 389, Ann. Cas. 1912B, 1312; Allen v. Commonwealth, 188 Mass. 59, 74 N. E. 287, 69 L. R. A. 599.

While it has been recognized and held by the courts and by the Board of Tax Appeals that a person can be engaged in more than one trade or business, and that it is not necessary that the trade or business in which a deduction is sought forms a taxpayer's principal trade or business, it is required that his activities shall be such that they may of themselves be regarded as an occupation or business. A single isolated activity or transaction is not sufficient to constitute a business or trade. J. J. Harrington, 1 B. T. A. 11; Fridolin Pabst, 6 B. T. A. 843; Harry J. Gutman, 7 B. T. A. 500.

In Mente v. Eisner (C. C. A.) 266 F. 161, 162, 11 A. L. R. 496, the court said:

"We think that the language 'losses incurred in trade' are correctly construed by the Treasury Department as meaning in the actual business of the taxpayer, as distinguished from isolated transactions. If it had been intended to permit all losses to be deducted, it would have been easy to say so. Some effect must be given to the words 'in trade.' "

The plaintiff contends that, aside from following his profession as physician and surgeon, he was also a broker and capitalist, and that the loss sustained in the purchase of the shares of stock in the Weatherford Milling Company resulted from his activities in such avocation.

Section 204 (a) and (b) of the Revenue Act of 1921 provides that a loss, in order to be deductible as a "net loss," must not only have been incurred from the operation of a trade or business, but from a trade or business regularly carried on by the taxpayer.

Under the rule that a trade or business regularly carried on must be held to mean a vocation and not occasional or isolated transactions, we are of the opinion the loss sustained by the plaintiff in the transaction involving the purchase of the shares of stock in the Weatherford Milling Company was not a loss sustained from the operation of a trade or business regularly carried on by him within the meaning of the statute.

During the year 1920, in which the plaintiff purchased the shares of the Weatherford Milling Company, he had no other transaction of any kind in stocks and leases, and had no real estate transaction. The purchase of these shares constituted his sole and only transaction as a capitalist and broker.

For the year 1921 he purchased one-half interest in a lease and royalty in Jefferson county, Okl., for the sum of $500. He did not purchase or sell any real estate during the year.

During the year 1922 he made no purchase or sale of stocks or leases, and his activity as a broker and capitalist was confined to the purchase of a 240-acre farm in Dewey county, Okl.

For the three years, 1920, 1921, and 1922, aside from the purchase of the shares in the Weatherford Milling Company, the plaintiff engaged in but three transactions in the purchase and sale of stocks, leases, and real estate. This was the extent of his activities in the avocation of broker and capitalist and

falls far short of the requirements of section 204 (a) "that as used in this section the term 'net loss' means only net losses resulting from the operation of any trade or business regularly carried on by the taxpayer."

These transactions were undoubtedly merely the occasional investment by the plaintiff of the income derived from his professional practice as a doctor and surgeon. They were isolated transactions and do not constitute the operation of a trade or business regularly carried on by the plaintiff.

In view of our decision that the loss sustained by the plaintiff did not result from the operation of a trade or business regularly carried on by him, it will not be necessary for us to discuss or pass upon the other points raised in the case.

The Commissioner was correct in his ruling denying the deductions sought by the plaintiff and in denying the claim for refund.

Plaintiff's petition is dismissed. It is so ordered.

BOOTH, Chief Justice, and GREEN, Judge, concur.

LITTLETON, Judge (dissenting).

While the facts proved by plaintiff as to his activities in connection with his purchases and sales of real and personal property over a period from 1914 to 1923, inclusive, are not as satisfactory as I should desire, or as might easily have been established had these matters been gone into at the time the testimony was taken, I am, however, of the opinion that the facts established in relation to the plaintiff's transactions, outside of his profession as a physician are sufficient to justify the conclusion that these transactions and the time spent by him in connection therewith constituted a business regularly carried on within the meaning of section 204 of the Revenue Act of 1921, 42 Stat. 227.

It is established that plaintiff employed a clerk and a business manager to look after his transactions outside of his profession as a physician and surgeon. For a number of years he had one Carlos Sewell, a business man in his employ, to look after his business interests. Grace Irwin, who was an officer of the Clinton Hospital and Training School where the plaintiff was principally engaged as a physician and surgeon, assisted him in keeping his records relating to his business transactions, and, as Carlos Sewell, who had been in the plaintiff's employ, had moved to California, L. Tooker was employed as plaintiff's business manager subsequent to the taxable years here involved. Plaintiff devoted about one-third of his time to his business matters outside of his profession. This fact is established by the testimony of the plaintiff and one other witness, and it is not contradicted. The plaintiff devoted the forenoon of each day almost exclusively to his profession as a physician and surgeon.

I do not think that plaintiff can be regarded as a capitalist or as a broker, but I do think that his business dealings over the years from 1914 to 1923, inclusive, and the time devoted thereto, as established by the facts, are sufficient to constitute a business entitling him to the benefits of the net loss provision of section 204 of the Revenue Act of 1921. The transactions which the plaintiff had were not few and isolated, although he may have had only one or two transactions in a particular year. Such transactions must be viewed in the light of all of the plaintiff's similar business interests, the character of those interests, and the time and attention devoted thereto by himself and those employed by him. Eysenbach, 10 B. T. A. 716; Brickell, 17 B. T. A. 711; Crane, 17 B. T. A. 720; Baker, 17 B. T. A. 733. The purpose of section 204 was to relieve from the harsh rule that required one's tax liability to be determined solely from the happenings of a twelve-month period. It is a relief provision and should be liberally construed. Marston, 18 B. T. A. 558. Treasury Decision 2090 would seem to include plaintiff within the terms of the definition of a loss incurred in trade as defined by the Treasury Department. In that Treasury Decision it is said: "The term 'in trade' as used in the law * * * is held to mean the trade or trades in which the person making the return is engaged; that is, in which he has invested money otherwise than for the purpose of being employed in isolated transactions and to which he devotes at least a part of his time and attention." In Treasury Decision 1989 it is stated: "In trade is synonymous with *business*. Business has been defined as—That which occupies and engages the time, attention, and labor of any one for the purposes of a livelihood, profit, or improvement; that which is his personal concern or interest; employment, regular occupation, but it is not necessary that it should be his sole occupation or employment." Had the purchase by the plaintiff in 1920 of the 126¼ shares of stock of the Weatherford Milling Company at a cost of $36,250 and the surrender thereof at a loss in that amount in December, 1922, been

the only transaction had by the plaintiff over a period of years outside of his profession, I should agree that he would not be entitled to the benefits of the net loss provision of section 204. But even aside from the various other dealings in prior and subsequent years, this was not the only business transaction he had outside of his profession in 1920, for it appears that in that year he purchased 65 residence lots in Clinton, Okl., and sold a portion of them, and in 1922 when he surrendered the stock in the Weatherford Milling Company and sustained the loss he also purchased a 240-acre farm in Dewey county, Okl., and sold the same in that year. With the exception of the year 1915, it appears that he had business transactions in the purchase or sale, or both purchase and sale, of real or personal property in every year from 1914 to 1926. In view of the facts established with reference to the number of transactions engaged in by the plaintiff, the fact that he devoted about one-third of his time to these matters, and the fact that he employed others to assist him, I am of opinion that under the statute he should have the benefit of whatever net loss he sustained in 1922 as a deduction from his income for that year, and that whatever excess remains should be deducted from his income for 1923.

It is clear from the evidence that plaintiff did not sustain the net loss until December, 1922, and his action in using a portion of it to reduce his income for 1921 was not justified.

Defendant insists that, in as much as the plaintiff has not established all the essential facts necessary to a computation of the amount of the net loss which may be used to reduce the net income for 1922 and 1923, as required by the provisions of section 204 (a), Schlesinger, 5 B. T. A. 943; Montgomery, 17 B. T. A. 1308, the court should dismiss the petition, even if it finds that he was engaged in a business regularly carried on within the meaning of that section. It appears that the Commissioner of Internal Revenue made no examination of plaintiff's books and records in connection with his disallowance of the loss claimed and made no computation of what the deductible net loss in 1922 and 1923, if there was one, would be; but entry of judgment as to the amount of the net loss, if any, can be withheld to enable the parties to stipulate the facts necessary to such determination or to enable the plaintiff to establish the amount of such loss by proof of the necessary facts.

It is further insisted by the defendant that section 204 of the Revenue Act of 1921 confides in the Commissioner of Internal Revenue a discretionary power, in the allowance of a claim for "net losses," and that his action is not subject to review by this court. There is no merit in this contention. The establishment of the loss is an ordinary question of fact of a nature which the courts constantly review in suits for the refund of taxes. The provisions of the statute that, "if for any taxable year beginning after December 31, 1920, it appears upon the production of evidence satisfactory to the commissioner that any taxpayer has sustained a net loss," repose in the Commissioner no such discretionary power as may not be reviewed by the courts. Boyle Valve Co. v. United States, 69 Ct. Cl. ——, 38 F.(2d) 135.

It seems to me, therefore, that the court should hold that the plaintiff is entitled to recover, and that entry of judgment should be withheld to enable the parties to submit a computation of the amount of the deductible net loss.