## ATKINS v. UNITED STATES.

### No. 42061.

Court of Claims.

April 6, 1936.

This case having been heard by the Court of Claims, the court, upon the report of a commissioner and the evidence, makes the following special findings of fact:

1. Plaintiff is a citizen of the United States and a resident of the state of New York.

2. Plaintiff filed his individual tax return for the calendar year 1927, in which he showed a loss of $56,186.33 and no tax due. In arriving at the loss of $56,186.33, plaintiff claimed deductions in his return of $132,-895.05 on account of certain real estate transactions, which were set out in the return as follows:

| | |
|---|---|
| 1. Lots 7, 8, and 9, Aquarium site, Miami Beach, Fla., acquired February 11, 1926, at a purchase price of..... $125,000.00 | |
| Defaulted on note due February 11, 1927, and notes maturing thereafter, in the total amount of ........... 43,333.34 | |
| Loss claimed ....................... | $ 81,666.66 |
| 2. Lots 11 and 12, block B, and lots 13 and 14, block I, Hollywood Hills, Fla., acquired August 5, 1925, at a cost of ..................... $ 13,400.00 | |
| Defaulted on installment due February 3, 1927, and subsequent installments in the total amount of............ 8,709.99 | |
| Loss claimed ....................... | $ 4,690.01 |
| 3. Lot 1, block 1, Nautilus division, Miami Beach, Fla., acquired June 13, 1925, at a cost of ..................... 28,000.00 | |
| House constructed thereon (completed during 1926) at a cost of..................... 128,538.38 | |
| Total cost .............. 156,538.38 | |
| House and lot sold during 1927 for ..................... 110,000.00 | |
| Loss claimed ....................... | 46,538.38 |
| Total loss claimed................. | $132,895.05 |

Upon an examination of plaintiff's books in connection with claim for refund for 1928, referred to in finding 4, the Commissioner of Internal Revenue found, and defendant now concedes, that the losses as shown in the return are in accord with the books of account as kept by plaintiff. In that examination the loss as shown on the return was reduced from $56,186.33 to $55,676.33.

3. March 15, 1929, plaintiff filed his individual income tax return for 1928 showing net income of $82,210.88 and a tax due of $10,805.71, which latter amount was paid in quarterly installments as follows:

| | |
|---|---|
| March 16, 1929....................................... | $2,701.43 |
| June 15, 1929........................................ | 2,701.43 |
| September 14, 1929................................... | 2,701.43 |
| December 1, 1929.................................... | 2,701.42 |

Thereafter, pursuant to an audit of plaintiff's return, the Commissioner made an additional assessment of $338.39 for 1928, which, together with interest in the amount of $39.25, was paid March 10, 1931.

4. March 14, 1931, plaintiff filed a claim for refund for 1928 in the amount of $10,-433.20 and assigned the following basis therefor:

"The claimant is engaged in the banking business and deals in securities and other properties with a view to profit. The result

of his business operations for the taxable year 1927 resulted in a net loss of $56,186.33. For the year 1928, his business operations resulted in a net profit upon which tax was paid without claiming deduction allowed by section 117 of the Revenue Act of 1928 (26 U.S.C.A. § 117 note)."

September 16, 1931, and January 7, 1932, the Commissioner advised plaintiff that the claim for refund would be rejected on the ground that the loss sustained in 1927 was not sustained in a trade or business regularly carried on by him, and therefore under the applicable statute could not be carried forward and allowed as a deduction in determining his tax liability for 1928. The claim was disallowed on a schedule dated July 14, 1932.

5. Prior to 1925, plaintiff had been interested in various activities, including real estate business, purchase and sale of stocks and bonds, hotel, race track, and casino promotions and operations, advancing money on business enterprises, and the sugar business.

6. From 1909 to 1925, plaintiff visited Florida on various occasions and became interested in investing in real estate in that state. He was also there in the winter of 1925–26 and in the fall of 1926, and has been there once or twice a year since that time.

In June, 1925, plaintiff acquired the lot in the Nautilus division, Miami Beach, Fla. (referred to as item 3 in finding 2), at a cost of $28,000. He thereafter constructed a house thereon at a cost of $128,538.38; the house being completed in 1926. He sold the house and lot in 1927 for $110,000. The house was built for the purpose of sale, and was not occupied by plaintiff as a residence; plaintiff having lived at the time in New York and Boston.

Plaintiff purchased the unimproved lots in Hollywood Hills, Fla. (referred to as item 2 in finding 2), in 1925, at a cost of $13,400. Plaintiff also purchased certain other unimproved lots in Miami Beach, Fla., in or about 1926. As a whole he invested approximately $300,000 in Florida real estate in 1925 and 1926. The foregoing properties were purchased for resale.

7. In carrying out the transactions referred to in finding 6, plaintiff had associated with him one William Flagg, who was then engaged in real estate speculation in Florida. The money was furnished by plaintiff, and the investments were made by Flagg. The arrangement between the two parties was that they would share profits and losses equally, though in the three transactions here in controversy plaintiff recovered nothing from Flagg on account of the losses sustained.

8. In April, 1926, plaintiff entered the employ of Hayden, Stone & Co., New York City, a concern which did a brokerage business, where he was engaged in meeting customers, developing business propositions, and similar activities. His salary at the beginning was $100 per week, but this was rapidly increased, so that in 1927 and 1928 he received $25,000 and $30,000 per year, respectively.

Under the terms of his employment with Hayden, Stone & Co., plaintiff was required to give his full time to that work in the event it was demanded. However, plaintiff's entire time was not demanded by Hayden, Stone & Co., and he was accordingly permitted to engage in certain business activities for his own individual profit and advantage. To that end he dealt extensively in stocks and bonds during 1927 and 1928 on his own and his wife's account; his transactions amounting to approximately $1,700,000 in 1927 and $2,500,000 in 1928, and in each year he realized a net profit on these activities. In addition he gave some time during 1927 to his investments in Florida real estate (heretofore referred to) through advice to his associate, Flagg, and in connection with matters relating to their financing and disposition. The Florida properties were finally disposed of in 1927.

Plaintiff kept books of account in which he had recorded the personal transactions referred to above. An employee of Hayden, Stone & Co. was paid extra compensation by plaintiff to act as his secretary and bookkeeper, and such employee performed the work outside of her regular hours of employment with Hayden, Stone & Co.

In preparing his tax returns for the years 1926, 1927, 1928, and 1929, the plaintiff stated that his occupation was that of "banker."

## Conclusion of Law:

Upon the foregoing special findings of fact, which are made a part of the judgment herein, the court decides as a conclusion of law that the plaintiff is not entitled to recover, and therefore the petition is dismissed.

Judgment is rendered against the plaintiff for the cost of printing the record herein, the amount thereof to be entered by the clerk and collected by him according to law.

Alex. M. Hamburg, for plaintiff.

Joseph H. Sheppard, of Washington, D. C., and Robert H. Jackson, Asst. Atty. Gen., for the United States.

Before BOOTH, Chief Justice, and GREEN, LITTLETON, WILLIAMS, and WHALEY, Judges.

WILLIAMS, Judge.

The plaintiff seeks to recover $10,433.20, an alleged overpayment of his federal income tax for the calendar year 1928. The claim is based on the contention that the plaintiff is entitled to deduct from his gross income for the year 1928 the amount of a loss sustained by him in the year 1927.

Plaintiff's income tax return for the year 1927 showed a loss of $56,186.33 and no tax due. In arriving at the amount of the loss, plaintiff took deductions in his return of $132,895.05 on account of certain Florida real estate transactions. The Commissioner of Internal Revenue, upon subsequent audit of the return, reduced the loss to $55,676.33.

Plaintiff's income tax return for the year 1928 showed a nct taxable income of $82,210.88 and a tax due of $10,805.71, which was duly paid. Plaintiff made no claim in the return for a deduction from gross income because of the loss sustained in the preceding year, but subsequently filed a claim for refund in respect to the taxes paid on the return, assigning the following grounds therefor:

"The claimant is engaged in the banking business and deals in securities and other properties with a view to profit. The result of his business operations for the taxable year 1927 resulted in a net loss of $56,186.33. For the year 1928, his business operations resulted in a net profit upon which tax was paid without claiming deduction allowed by section 117 of the Revenue Act of 1928 (26 U.S.C.A. § 117 note)."

The Commissioner disallowed the claim for refund on the ground that the loss sustained in 1927 was not sustained in a trade or business regularly carried on by plaintiff, and therefore could not be carried forward to the year 1928 under the provisions of section 117 of the Revenue Act of 1928 (26 U.S.C.A. § 117 note). This section, so far as here pertinent, reads:

Section 117. *Net losses.* "(a) Definition of 'net loss.' As used in this section the term 'net loss' means the excess of the deductions allowed by this title over the gross income, with the following exceptions and limitations:

"(1) *Nonbusiness deductions.* Deductions otherwise allowed by law not attributable to the operation of a trade or business regularly carried on by the taxpayer shall be allowed only to the extent of the amount of the gross income not derived from such trade or business. * * *

"(e) *Net loss for 1926 or 1927.* If for the taxable year 1926 or 1927 a taxpayer sustained a net loss within the provisions of the Revenue Act of 1926, the amount of such net loss shall be allowed as a deduction in computing net income for the two succeeding taxable years to the same extent and in the same manner as a net loss sustained for one taxable year is, under this Act, allowed as a deduction for the two succeeding taxable years."

The definition of net losses in section 206 (a) (1) of the Revenue Act of 1926 (44 Stat. 17, 26 U.S.C.A. § 117 note) is the same as that given in section 117 (a) (1) of the 1928 act above quoted.

The sole question is whether the losses sustained by plaintiff during the year 1927 in connection with his transactions in Florida real estate were incurred in the operation of a trade or business regularly carried on by him.

What constitutes a trade or business for net loss purposes under the various Revenue Acts has been stated by the courts and the Board of Tax Appeals in numerous cases, and that question has been quite definitely settled. In Rogers v. United States, 41 F.(2d) 865, 868, 70 Ct.Cl. 159, this court said:

"The words 'trade or business,' as used in the statute in connection with losses, has been held by the courts to mean and refer to a regular occupation or calling of the taxpayer for the purpose of livelihood or profit. Flint v. Stone Tracy Co., 220 U.S. 107, 171, 31 S.Ct. 342, 55 L.Ed. 389, Ann. Cas.1912B, 1312; Allen v. Commonwealth, 188 Mass. 59, 74 N.E. 287, 69 L.R.A. 599.

While it has been recognized and held by the courts and by the Board of Tax Appeals that a person can be engaged in more than one trade or business, and that it is not necessary that the trade or business in which a deduction is sought forms a taxpayer's principal trade or business, it is required that his activities shall be such that they may of themselves be regarded as an occupation or business. A single isolated activity or transaction is not sufficient to

constitute a business or trade. Appeal of J. J. Harrington, 1 B.T.A. 11; Fridolin Pabst v. Com'r of Internal Revenue, 6 B.T. A. 843; Harry J. Gutman v. Com'r of Internal Revenue, 7 B.T.A. 500."

In Dalton et al. v. Bowers, 56 F.(2d) 16, 18, Judge Manton, speaking for the Circuit Court of Appeals, Second Circuit, said:

"By the statute, allowing the deductions and carrying over the loss for two years, Congress intended to give relief to persons engaged in an established business for losses incurred during a year of depression in order to equalize taxation in the two succeeding and more profitable years. It was not intended to apply to occasional or isolated losses."

This language was quoted with approval by the Supreme Court in Dalton v. Bowers, 287 U.S. 404, 53 S.Ct. 205, 77 L.Ed. 389.

█ The extent of the plaintiff's real estate dealings was limited to three purchases of lots in Florida, two in 1925, and one in 1926, and the disposition of such lots in 1927 at a loss of $132,895.05. The plaintiff stated in his income tax returns for the years 1926, 1927, 1928, and 1929 that his occupation was that of "banker." Prior to the date of his investments in Florida lots, it appears plaintiff was in the promotion and finance business generally in connection with hotels, race track and casino properties, real estate, sugar, and other business enterprises, also the purchase and sale of stocks and bonds. From early in 1926 and during the years 1927 and 1928, he held a position with the brokerage firm of Hayden, Stone & Co., of New York, receiving a salary of $25,000 for 1927, and $30,000 for 1928. Under the terms of his employment, he was permitted to engage in other activities for his own individual profit and advantage, which he did, and in 1927 and 1928 dealt extensively in stocks and bonds on his own and his wife's account; such transactions amounting to $1,700,000 in 1927 and $2,500,000 in 1928, upon which he realized a net profit for each of the years.

We think it clear that plaintiff's investments in Florida real estate were isolated transactions in no way connected with any trade or business regularly carried on by him. The loss sustained by him on the disposition of these properties in 1927 was properly deducted from gross income for that year under section 214 (a) (5) of the Revenue Act of 1926 (44 Stat. 26) as a loss incurred in transactions "entered into for profit, though not connected with the trade or business." Such loss, however, was not a net loss within the meaning of the Revenue Acts of 1926 and 1928 which could be carried over and deducted from gross income in a subsequent year.

The plaintiff is not entitled to recover. The petition is dismissed. It is so ordered.

BOOTH, Chief Justice, and WHALEY, LITTLETON, and GREEN, Judges.