STUART FUNK, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Funk v. Commissioner
Docket No. 9736-77.
United States Tax Court
T.C. Memo 1979-426; 1979 Tax Ct. Memo LEXIS 96; 39 T.C.M. (CCH) 359; T.C.M. (RIA) 79426; October 15, 1979, Filed Stuart Funk, pro se. Joyce Elaine Britt, for the respondent. DAWSON
MEMORANDUM FINDINGS OF FACT AND OPINION DAWSON, Judge: This case was assigned to and heard by Special Trial Judge Murray H. Falk pursuant to the provisions of section 7456(c) of the Internal Revenue Code of 1954, as amended, and General Order No. 6 of this Court, 69 T.C. XV (1978). [1] The Court agrees with and adopts the Special Trial Judge's opinion which is set forth below. OPINION OF THE SPECIAL TRIAL JUDGE FALK, Special Trial Judge: Respondent *98 determined the following deficiencies in petitioner's 1974 and 1975 federal income taxes and additions thereto under sections 6651(a), [2] 6653(a), and 6654: Additions to tax under
Year
Deficiency
Sec. 6651(a)
Sec. 6653(a)
Sec. 6654
1974
$1,679 $420 $84 $54
1975
$2,143 $536 $107 $69
The issues for decision are: 1. The amount of petitioner's gross income for each of the years 1974 and 1975. 2. Whether petitioner's failure timely to file a federal income tax return for each of the years 1974 and 1975 was due to his willful neglect and not due to reasonable cause within the meaning of section 6651(a). 3. Whether any part of the underpayment (if such underpayment exists) os tax for each of the years 1974 and 1975 was due to negligence or intentional disregard of rules and regulations within the meaning of section 6653(a). 4. Whether there is any underpayment of estimated tax by petitioner for each of the years 1974 and 1975 so as to require imposition of the addition to tax provided in section 6654. FINDINGS *99 OF FACT Some of the facts have been stipulated and they are so found. Petitioner resided at Tamal, California, at the time he filed his petition in this case. At all times relevant hereto, he resided in the State of California. He filed no federal income tax return for either of the years 1974 or 1975. In 1971, when he was about 23 years of age, petitioner was arrested by local authorities for possession of an ounce of marijuana. He had an inexpensive attorney. Petitioner was placed on probation for a period of three years and fined $125. It took him three years to pay the fine. Petitioner filed federal income tax returns for 1970, 1971, and 1972, on which he reported gross income of $5,150, $2,425, and $2,100, respectively. He filed no federal income tax return for 1973. Petitioner was arrested again on February 20, 1975, at which time he had in his possession $6,112 in currency and 25 pounds of marijuana having a wholesale cost of $60 a pound and street value of $70 - $75 a pound. He was sentenced to serve a term of five years to life in prison. He was released on parole after serving three years. In 1973, 1974, and until his arrest in February of 1975, petitioner *100 lived an alternative life-style, working with a cooperative which included farming and which paid him for his services primarily in commodities. He needed very little cash. He and the woman with whom he lived paid rent of only $25 a month. He earned some money as a mechanic and, in 1974, received $2,500 from that source, mainly from the sale of a reconditioned car. He owned a $500 truck and $2,000 to $3,000 worth of tools. He has no records of his income for 1974 or 1975. Respondent determined that petitioner had adjusted gross income of $7,800 in 1974 and $9,512 in 1975. His determination with respect to 1974 was made solely on the basis of Bureau of Labor Statistics estimated living expenses of $7,800 for that year. His determination with respect to 1975 was made on the basis of such estimated living expenses for two months at the rate of $7,800 a year, plus the amount of cash ($6,112) and the value of marijuana ($2,100) in petitioner's possession at the time of his arrest on February 20, 1975. Respondent also determined that petitioner was liable with regard to both years for the additions to taxes pursuant to section 6651(a) for failure to file timely returns, pursuant *101 to section 6653(a) for negligence or intentional disregard of rules and regulations (not amounting to fraud) in connection with underpayment of his taxes, and pursuant to section 6654 for underpayments of estimated taxes. In this proceeding, respondent concedes that the annual cost of living estimate for 1974 and 1975 should have been $3,490. Of the currency and cost to petitioner of the marijuana in his possession at the time of his arrest on February 20, 1975, $2,500 was Carol Peigh's money and $2,000 was earned by petitioner or otherwise in his possession prior to 1975. The amount petitioner paid for the marijuana in his possession was $1,500. Petitioner had adjusted gross income in the amounts of $3,490 in 1974 and $3,600 in 1975. There is an underpayment of estimated tax by petitioner for 1975, only. OPINION The issues here are purely factual. Petitioner appears to feel that he has been badly treated by The Establishment. He has no use for banks, he refers to police as thieves and to the State as an extortionist, and he believes that business-people have persecuted him because his life-style threatens their profits. As a result, he is extremely defensive with regard *102 to this matter [3] and his testimony is, to say the least, far from a model of clarity. Petitioner having filed no return of his income, respondent is required to determine how much that income was. [4] Inasmuch as petitioner has no records of that income, respondent and, in turn, we have no choice but to reconstruct it by some reasonable method. Schroeder v. Commissioner,40 T.C. 30, 33 (1963). "The existence of unreported income may be demonstrated by any practicable proof that is available in the circumstances of the particular situation." Davis v. United States,226 F.2d 331, 336 (6th Cir. 1955). *103 Petitioner earned his keep in 1974 and until February 20, 1975, working for a cooperative. Those earnings are income to him. Sec. 61(a). The fact that he was paid in commodities rather than in cash is of no consequence; the fair market value of what he received as compensation for his labor was income to him. See Pessin v. Commissioner,59 T.C. 473 (1972). The situation here is different from that presented in Morris v. Commissioner,9 B.T.A. 1273 (1928), where it was held that products of a farm consumed by the operator thereof and his family do not come within any of the categories of income enumerated in the taxing statutes and the administrative regulations of the Commissioner. Petitioner here does not contend that he was in the business of farming. If he were, of course, it would be necessary to determine what his farm income was. Since he was not, the products of the farm which he was given were not consumed by him as "the operator thereof," but, rather, constituted property transferred to him in connection with the performance of services. See sec. 83(a). Having no other way to measure the value of those goods, respondent is justified *104 in relying upon Department of Labor, Bureau of Labor Statistics data to arrive at an estimate of petitioner's total living expenses. In our determination, we rely on the parties' stipulation as to that annual figure applicable to petitioner for 1974 and 1975. For 1974, we include that entire annual amount. For 1975, we include 51/365 of it, February 20 (the day petitioner was arrested and incarcerated) being the 51st day of the year. We believe Carol Peigh's testimony that she had placed $2,500 of her own money in petitioner's possession shortly prior to his arrest. We also believe that petitioner accumulated $2,000 from his savings, the sale of a reconditioned car, and other sources before the beginning of 1975. Carol Peigh corroborates that petitioner did have this amount of cash.Accordingly, we have eliminated $4,500 from petitioner's income for 1975 as determined by respondent from the value of the currency and marijuana in petitioner's possession at the time of his arrest. Petitioner would have us believe that the entire $6,112 in currency came from Carol Peigh and his life's savings. We find that to be incredible. When he was arrested in 1971, petitioner lost all of *105 his possessions and hired an inexpensive lawyer. It took him three years to pay his $125 fine. He accumulated $2,000 to $3,000 worth of tools and other possessions in the ensuing years while reporting income of only $2,425 and $2,100 in 1971 and 1972. He presumably had insufficient income in 1973 to require the filing of a return and, as we have found, had income of $3,490 in 1974. In these circumstances we are unpersuaded that he accumulated more than $2,000 of his own money prior to 1975. [5]
We believe petitioner's testimony that the amount of marijuana in his possession at the time of his arrest was 25 pounds, not 35 pounds as initially stated in his arrest report. There is no dispute between the parties that it had a wholesale value of $60 a pound. We simply do not believe petitioner's testimony that he had made only a down payment for the marijuana. Given the amount of currency in his possession, *106 the vagueness of his testimony, and having observed his demeanor while testifying on this subject, we find his self-serving testimony unworthy of belief in this regard. Petitioner offered no evidence on the issues of his failure to file timely returns and negligence or intentional disregard of rules and regulations in connection with the underpayments of taxes. Inasmuch as the burden of proof on these issues was upon petitioner, Welch v. Helvering,290 U.S. 111 (1933); Rule 142(a), Tax Court Rules of Practice and Procedure, we sustain respondent's imposition of the additions to taxes under sections 6651(a) and 6653(a) in the appropriate amounts based upon the deficiencies as we have redetermined them. With regard to the additions to taxes under section 6654, we believe that petitioner was required to file a declaration of estimated income tax only with respect to 1975, in which year, only, he received more than $500 from sources other than wages, and we so hold. See sec. 6015(a). * * *
In accordance with the foregoing, Decision will be entered under Rule 155. Footnotes
1. Pursuant to General Order No. 6, the post-trial procedures set forth in Rule 182, Tax Court Rules of Practice and Procedure↩, are not applicable to this case.
2. All section references are to the Internal Revenue Code of 1954, as amended, unless otherwise indicated.↩
3. There is also an indication in the record that petitioner fears reprisals by persons with whom he associated in his illegal activities in the event that he is too candid.↩
4. Sec. 7601(a) provides: The Secretary [of the Treasury] shall, to the extent he deems it practicable, cause officers or employees of the Treasury Department to proceed, from time to time, through each internal revenue district and inquire after and concerning all persons therein who may be liable to pay any internal revenue tax, and all persons owning or having the care and management of any objects with respect to which any tax is imposed.↩
5. Perhaps some of his $2,000 was earned by petitioner in 1974, but, inasmuch as respondent has relied solely upon estimated living expenses for the determination of petitioner's 1974 income and has not moved to amend his pleadings herein, we do not reach that question.↩