## DE HAVEN MFG. CO. v. UNITED STATES.

District Court, E. D. New York.   April 4, 1929.

Smith & Bowman, of New York City (Harold H. Bowman and Meyer Kurz, both of New York City, of counsel), for petitioner.

William A. De Groot, U. S. Atty., of Brooklyn, N. Y. (Howard W. Ameli and Albert D. Smith, Asst. U. S. Attys., both of Brooklyn, N. Y., and C. M. Charest, Gen. Counsel, Bureau of Internal Revenue, and H. A. Cox, Sp. Atty., Bureau of Internal Revenue, both of Washington, D. C., of counsel), for the United States.

COOPER, Acting District Judge.   Plaintiff brings suit to have its income taxes for 10 months of its fiscal year ending February 28, 1919, redetermined pursuant to the provisions of section 204(b) of the Revenue Law of 1918 (40 Stat. 1061).

Plaintiff is a corporation. It keeps its books of account and makes its income tax returns on the basis of a fiscal year ending on the last day of February of each year. During the fiscal year ending February 28, 1919, its net income was $83,181.27, and it paid an income and excess profits tax thereon of $30,242.54. During the fiscal year ending February 29, 1920, it sustained a net loss of $51,046.64. It now claims the right to deduct, under section 204(b), so much of the net loss as it sustained during the 10 months of the year 1919 (March to December, inclusive) from the net income of the former year, ending February 28, 1919, and to have its taxes for the former year redetermined, and upon such redetermination to recover the sum of $26,726.84, excess taxes paid.

Section 204(b) reads as follows: "If for any taxable year beginning after October 31, 1918, and ending prior to January 1, 1920, it appears upon the production of evidence satisfactory to the Commissioner that any taxpayer has sustained a net loss, the amount of such net loss shall under regulations prescribed by the Commissioner with the approval of the Secretary be deducted from the net income of the taxpayer for the preceding taxable year; and the taxes imposed by this title and by title III for such preceding taxable year shall be redetermined accordingly. Any amount found to be due to the taxpayer upon the basis of such redetermination shall be credited or refunded to the taxpayer in accordance with the provisions of section 252. If such net loss is in excess of the net income for such preceding taxable year, the amount of such excess shall under regulations prescribed by the Commissioner with the approval of the Secretary be allowed as a deduction in computing the net income for the succeeding taxable year."

"Taxable year" is defined in section 200 of the act as follows: "The term 'taxable year' means the calendar year, or the fiscal year ending during such calendar year, upon the basis of which the net income is computed under section 212 or section 232. The term 'fiscal year' means an accounting period of twelve months ending on the last day of any month other than December." 40 Stat. 1058.

The facts are stipulated. The decision turns upon the construction of the statute. In considering the meaning of the act, the subject will be discussed as of the date of the passage of the act, and, as far as possible, the verbs used will be used in the present tense.

The Revenue Act of 1918, 40 Stat. 1057, was not passed until February 24, 1919. The Armistice, terminating active hostilities of the World War, was entered into on November 11, 1918, and, while this was not a treaty of peace, Congress was satisfied that the war was over and that a period of deflation of values had begun. To give relief from the deflation and consequent losses was the purpose of Congress in including the aforesaid section 204(b) in the Revenue Act of 1918.

In the appeal of the Norfolk Knitting Mills Co., 5 B. T. A. 794, the Board of Tax Appeals said with reference to provisions in this section: "The purpose of Congress * * * seems too obvious to be a matter of debate; its purpose was to provide that taxpayers suffering losses during the period

between November 1, 1918, and January 1, 1920, were to be allowed relief from taxation by crediting such losses first against 1918, when taxpayers were believed to have enjoyed the benefit of war prices and to have made large profits and carried proportionately heavy burdens of income and profits taxes, and, in the event that profits of 1918 were insufficient to absorb the loss, the balance thereof, or so much of it as possible, should be absorbed by profits of the year 1920, when it was expected that business conditions and commodity prices would again become normal."

On the face of the statute, giving the words their usual and ordinary meaning, it is not to be doubted that only those taxpayers come under section 204(b) who have a taxable year beginning after October 31, 1918, and ending prior to January 21, 1920. Clearly this excludes all taxpayers whose taxable year does not come wholly within the 14 months period, and would, of course, exclude the plaintiff. Such construction would also exclude ten-elevenths of all taxpayers who have a fiscal year other than the calendar year, because only those taxpayers having a fiscal year ending November 30th would have their entire taxable year within the 14 months period. It is almost common knowledge that a large number of taxpayers have a taxable year—that is, a fiscal year—which is not wholly within the 14 months period.

In fact, the statute itself in another section, namely, section 205(b) of the same Revenue Act of 1918 (40 Stat. 1061), plainly indicates that Congress knew at the time of the enactment of this statute that there were taxpayers whose fiscal year began in one calendar year and ended in another, and part of which was outside of the 14 months period. Section 212(b) of the same act (40 Stat. 1064) also refers to the taxpayers having a like fiscal year.

It is clear, therefore, that Congress, in attempting by section 204(b) to provide relief for taxpayers who would suffer deflation losses during the 14 months period, either inadvertently used language which on its face excluded all taxpayers whose taxable year did not begin and end within the 14 months period or deliberately intended to exclude such taxpayers. The sole question in this case is what was the intent of Congress.

Plaintiff asserts that, if the statute is construed as the government contends, it works discrimination, injustice, and inequality to the many taxpayers whose fiscal year begins or ends outside the 14 months period, and that no such construction should be giv-

en a statute, if a more reasonable meaning avoiding such inequalities can be found in the statute itself, or when the object sought to be attained and evil to be remedied are to be considered. Plaintiff has authority for its contention.

In Heydenfeldt v. Daney Gold & S. Mining Co., 93 U. S. 634, 23 L. Ed. 995, the United States Supreme Court said: "If a literal interpretation of any part of it [statute] would operate unjustly, or lead to absurd results, or be contrary to the evident meaning of the act taken as a whole, it should be rejected."

In Knowlton v. Moore, 178 U. S. 41, 20 S. Ct. 747, 44 L. Ed. 969, the Court in an opinion by Mr. Justice White said: "We are, therefore, bound to give heed to the rule, that where a particular construction of a statute will occasion great inconvenience or produce inequality and injustice, that view is to be avoided if another and more reasonable interpretation is present in the statute."

Of like import are Holy Trinity Church v. United States, 143 U. S. 457, 12 S. Ct. 511, 36 L. Ed. 226; Scandinavia Belting Co. v. Asbestos (C. C. A.) 257 F. 937; Roxford Knitting Co. v. Moore et al. (C. C. A.) 265 F. 177, 11 A. L. R. 1415; Bankers' Trust Co. v. Bowers (C. C. A.) 295 F. 89, 31 A. L. R. 922.

There seems to be no reason on the face of things why Congress should have any greater solicitude for those taxpayers who had the entire taxable period within the 14 months, and were given relief, than for those whose taxable period was partly within and partly without such period, and who were denied such relief. But a consideration of the situation of income taxpayers independent of section 204(b) of the act in question shows that under that section there is no such discrimination and inequality in favor of some taxpayers and against others as the face of the statute seems to indicate.

If, for instance, a taxpayer has for his taxable year the fiscal year ending June 30, 1919, even without the provision of subdivision 204(b), the taxpayer can and does apply the losses for the 8 months from October 31, 1918, to June 30, 1919, against the profits of the preceding 4 months from June 30, 1918, to October 31, 1918. So far as the losses for the remaining 6 months of 1919, the first 6 months of the next fiscal year, namely, June 30th to December 31st, are concerned, without the provision of section 204(b), the taxpayer may apply the losses of these 6 months against the profits of the remaining

6 months of the second fiscal year, viz., the six months from January 1, 1920, to June 30, 1920.

It is not to be lost sight of that Congress expected the period of deflation would end on December 31, 1919, and that the year 1920 would be one of profits. So that in effect the taxpayer having his fiscal year ending June 30, 1918, may have his losses for the entire 14 months period applied, as to the first 8 months, against all profits of the 4 months of 1918, and, as to the other 6 months, against the profits of the first 6 months of 1920. Thus a very large portion of the supposed discrimination disappears.

The taxpayer does not, of course, in his accounting, segregate his profits and losses according to these portions of a year within and without the 14 months period and then offset one against the other. His accounting period is one continuous 12 months period, but his right to limit his taxes to his profits in the taxable year as a whole accomplishes the same result as if he did segregate or allocate the losses of the portion of each fiscal year within the 14 months, and offset them against the profits of the portion without that period.

A taxpayer like the plaintiff, whose fiscal year ends February 28th, is in similar situation. His loss during the 4 months from October 31, 1918, to February 28, 1919, is deductible against profits of the 8 months of 1918 from February 28th to October 31st, and his losses for the remaining 10 months of 1919, namely, from February 28, 1919, to December 31, 1919, may be offset against the expected profits of the 2 months, January and February of 1920.

True, a taxpayer having a fiscal year ending February 28th, like plaintiff, may not fare quite as well as a taxpayer whose fiscal year ends June 30th; but it is not always possible to make laws which apply with equal effect to all persons.

But the taxpayer whose fiscal year corresponds with the calendar year cannot offset his losses incurred in the calendar year 1919 against the profits of either 1918 or 1920, or any part of either of such years, except under section 204(b). Without section 204(b), the taxpayer having a fiscal year which did not begin and end within the 14 months period would have a decided advantage over the taxpayer with a calendar year, or with a fiscal year beginning and ending within such period.

If the taxpayer having a taxable year beginning in one calendar year and ending in another may also avail himself of the provisions of section 204(b), in a sense he has a double or a cumulative relief, while the taxpayer whose taxable year coincides with the calendar year, or comes wholly within the 14 months period, has only the relief provided in section 204(b). Except for section 204(b), there would be thus an inequality or discrimination running against taxpayers having a calendar year or fiscal year wholly within the 14 months period.

It is reasonably clear, then, that by section 204(b) Congress did not, either through inadvertence or design, create inequality among taxpayers, but, on the contrary, did remove inequality, which, because of changed economic conditions, would otherwise have arisen under existing law. The authorities cited by plaintiff to support its contention that the letter of the law must be overridden, if a contrary intent is manifest from the whole statute, or because of the object to be attained or the evil to be remedied, have, therefore, no application here.

That Congress did not intend to include within the provisions of section 204(b) taxpayers whose taxable year was not wholly within the 14 months period, may also be gathered from the history of the legislation. When the Revenue Act of 1918 passed the House of Representatives in its first form, there was no net loss provision in the bill. After the bill reached the Senate, and had been referred to the proper committee and reported to the Senate by that committee, the Senate adopted certain amendments to the bill suggested by the committee. One of the amendments was the insertion of a provision to give relief against net losses due to deflation of values. This amendment was inserted under the designation "Net Losses" in section 204, and particularly in subdivisions (b) and (c), which read as follows:

"(b) If for any taxable year beginning after December 31, 1916, and ending not later than December 31, 1918, it appears upon the production of evidence satisfactory to the Commissioner that any taxpayer (other than a life insurance company) has sustained a net loss, the amount of such net loss shall under regulations prescribed by the Commissioner with the approval of the Secretary, be allowed as deduction in computing the net income of the taxpayer for the *succeeding* taxable year.

"(c) If for any taxable year ending after January 1, 1919, it appears * * * that any taxpayer * * * has sustained a net loss, the amount of such net loss

* * * be deducted from the net income of the taxpayer from the *preceding* taxable year."

See Congressional Record, pp. 513-518, volumes 57, part 1, 65th Congress, Third Session.

The House did not agree with this Senate amendment, nor with certain other amendments, and conference committees appointed by the two branches of Congress finally compromised various disputed matters and among them section 204(b). As finally agreed upon by the conference committees and enacted in the language now appearing in the statute, section 204(b) seems to be a combination of sections 204(b) and 204(c) of the Senate amendments. The period of time to be covered by the net loss provision was finally limited to a taxable year "beginning after October 31, 1918, and ending prior to January 1, 1920." And the loss was to be deducted, not from the succeeding taxable year, as was provided in the Senate amendment, section 204(b), but from the *preceding* taxable year, as was provided in the Senate amendment, section 204(c), with the addition that, if the loss in the taxable year wholly within the 14 months period was greater than the profit of the *preceding* taxable year, the excess could be offset against the profit of the *succeeding* taxable year.

After such agreement by the conference committees, the chairman of the House committee, Congressman Kitchin, made a report with reference to the various things the conference committee had done, and included therein was the following concerning this section 204(b), as agreed upon by the conference committee:

"Another innovation to which I have referred, which the Senate put in the bill, was the net loss provision. As I said, the Senate had the time unlimited for the future, and it reached back to the taxes of 1916; that is, the Senate provision permitted a redetermination of the taxes as far back as 1916 and for all time in the future. The conferees finally concluded that the best thing to do was to limit it to the transition period; in other words, the one year 1919. The inventory and net loss relief provisions are emergency provisions and the conferees agreed to treat them in that way.

"The net loss provision is this: If a business or trade shows in 1919 (or in its fiscal year, between October 31, 1918, and January 1, 1920, which includes the calendar year of 1919, a net loss, instead of a net profit, it can take that loss from the income upon which it paid the taxes for 1918, and have the 1918 tax redetermined, just as I have explained in the case of the inventory, and have the difference between the tax paid and the tax as redetermined refunded to it.

"In other words, if the trade or business makes $500,000 clear net profit in 1918, and this year 1919, during the transition period, instead of making a profit, it loses $100,000; then we permit that business to go to the Commissioner and ask for a redetermination of its tax for 1918. The Commissioner will deduct from the income of $500,000 as returned for 1918 the $100,000 loss, leaving $400,000. Upon the basis of $400,000 income the 1918 tax will be recomputed, and the difference between the tax paid on the $500,000 and the tax computed on $400,000 income will be returned to the taxpayer."

Had section 204(c) of the Senate amendment remained in the act, plaintiff and all other taxpayers would have come within its terms, for the language "any taxable year ending after January 1, 1919," was broad enough to cover every taxpayer and every taxable year. But it was eliminated, because the House of Representatives would not accept it.

The fact that a relief provision broad enough to include all taxpayers was inserted by the Senate in the bill, and such a provision eliminated before passage, and the present narrower provision substituted, limiting the relief to those taxpayers whose fiscal year comes wholly within the 14 months time limit of statute as enacted, warrants the conclusion that Congress intended to exclude all taxpayers except those whose fiscal year comes within such 14 months period.

One further inference drawn from the statute militates also against the plaintiff's contention.

If the relief provisions of section 204(b) were to run to taxpayers whose taxable year was not wholly within the 14 months period, then it could not run to the entire taxable year of such taxpayers, but only to the fractions or portions thereof within such period. If a taxpayer had a fiscal year like that of the plaintiff, which ended on February 28th, there would be 4 months of one taxable year within the 14 months period, and 10 months of the taxable year within the same period.

If Congress had intended that all taxpayers should have the benefit of the remedial provisions of section 204(b) to make the provisions effective, a formula or method would be necessary for determining or prorating the losses for so much of each taxable year as come within the 14 months period, or a

provision would be necessary requiring taxpayers to take an inventory at the end of the portion of the year coming within the 14 months period; or at least there would have been need for a provision that the Commissioner of Internal Revenue could devise by regulation or otherwise some method of so determining or prorating the net losses for fractional parts of a taxable year. But the statute is silent on that point.

■ True, section 201(e), 40 Stat. 1060, provides for determining ratably the amount of profits earned during a portion of a year, for the purpose of fixing profits out of which dividends are deemed payable, but this provides no method of prorating losses. Nor was there any applicable provision in previous Revenue Acts for prorating losses. There will be no presumption that Congress inadvertently neglected or omitted any subject or class of persons from the provisions of any act of Congress, nor that Congress hastily enacted legislation. On the contrary, the opposite presumption must prevail.

The absence of any provision for determining or prorating net losses for fractional parts of a year apparently is significant. If there are no fractional parts of a taxable year within the terms of section 204(b), there is no need for provision for determining or prorating the net losses during such fractional parts of the taxable year. Conversely, if there is no provision for determining or prorating losses, it is a reasonable inference that there is no intent to include that which would make such provision necessary.

One more of plaintiff's contentions remains to be considered; that is, the contention that it has been authoritatively held by both the court and the Board of Tax Appeals that, despite the provisions of section 204(b) and section 200, a period of less than 12 months has been held to be a taxable year, within the meaning of section 204(b). Plaintiff relies upon: Pennsylvania Chocolate·Co. v. Lewellyn (D. C.) 27 F.(2d) 762; U. S. v. Carroll Chain Co. (D. C.) 8 F.(2d) 529; U. S. v. Stimson Computing Scale Co. (D. C. W. D. Ky.) no opinion, overruling decision of the Board of Tax Appeals; and upon Appeal of Norfolk Knitting Mills Corp., 5 B. T. A. 794; Appeal of Lynch Construction Co., 3 B. T. A. 313; Appeal of Purity Oats Co., 4 B. T. A. 585; Appeal of Durabilt Steel Locker v. Commissioner, 5 B. T. A. 239; Bruner Woolen Co. v. Commissioner of Internal Revenue, 6 B. T. A. 881.

Plaintiff, therefore, contends that, since the taxable year of section 204(b) may, under the above authorities, be less than a full 12-month year, that section should be so construed as to cover so much of the taxable year as comes within the 14 months period of the section. In the case at bar, that would bring 10 months from February 28, 1919, to December 31, 1919, within the provisions of section 204(b).

The difficulty with plaintiff's position is that the cases upon which plaintiff relies are distinguishable from the case at bar in two respects, viz.: (1) The less than 12 months period was a full accounting period, or fiscal or taxable year, arising either because the taxpayer had not been in business 12 months, or because of dissolution before the expiration of the full 12 months fiscal year, or because of a change of taxable year with the consent of the Commissioner, making the first new fiscal and taxable year one of less than 12 months; and (2) the whole of the less than 12 months period was within the 14 months period of section 204(b).

These distinctions seem to entirely differentiate plaintiff's case from the authorities on which it relies, and limit their application to cases where the fiscal and taxable year is less than 12 months. That is really no support at all for plaintiff's contention. His accounting period and fiscal and taxable year are alike 12 months, and the same 12 months. They do not come wholly within the 14 months period.

Despite the 10 years since the enactment of this law, there is only one decision construing section 204(b), where the taxable year of 12 months is partly within and partly without the 14 months period. This is the Ennis-Brown Case, 10 B. T. A. 1248, decided March 8, 1928. In that case the taxable year began before the 14 months and ended within it, while in the case at bar it begins within and ends after that period. This distinguishes the case in detail, but not in principle. In other respects the facts are alike, and the decision is in the closest analogy. The Board of Tax Appeals held in the Ennis-Brown Case that the taxpayer did not come within the provisions of section 204(b).

For the reasons set forth herein, it must be held that section 204(b) runs only to taxpayers whose taxable year falls wholly within the 14 months period of the section, and, as plaintiff's taxable year does not fall wholly within that period, plaintiff must be defeated.

Judgment may be entered, dismissing the complaint on the merits.