**WASHBURN v. COMMISSIONER OF INTERNAL REVENUE.**

No. 8886.

Circuit Court of Appeals, Eighth Circuit.

Aug. 11, 1931.

A. McC. Washburn, of Minneapolis, Minn., for petitioner.

Hayner N. Larson, Sp. Asst. to Atty. Gen. (G. A. Youngquist, Asst. Atty. Gen., Sewall Key and J. P. Jackson, Sp. Assts. to Atty. Gen., and C. M. Charest, Gen. Counsel, Bureau of Internal Revenue, and J. K. Polk, Sp. Atty., Bureau of Internal Revenue, both of Washington, D. C., on the brief), for respondent.

Before KENYON and BOOTH, Circuit Judges, and OTIS, District Judge.

KENYON, Circuit Judge.

This appeal is from a decision of the Board of Tax Appeals (hereinafter designated the Board) holding that petitioner was not entitled to a deduction on his income tax for 1923, based on a loss sustained in 1922, for the reason that the same did not result from the operation of any trade or business regularly carried on by petitioner. The facts are these:

From 1880 until 1921 petitioner was a lawyer engaged in the active practice of his profession at Duluth, Minn. While practicing law, he organized a number of corporations and enterprises. In 1911 he retired from such practice in order to give his entire time to these various enterprises in which he was heavily interested, and which consisted in a general way of a national bank, a mineral association, a transit corporation, a hotel company, an abstract company, a land and loan company, and other corporations, four of which were timber holding corporations, which he practically managed alone. Whatever amounts he received as salary from these corporations were payments to reimburse him for actual expenses in connection with services rendered. Certain bonuses were paid him in appreciation of his services, but there was no legal obligation to pay either salary or bonus. The stock in most of the corporations, which was originally acquired by him as an investment, was closely held and seldom traded in. In order to open up the timber lands of one of the companies he organized in 1913 what was known as the Gales Creek & Wilson River Railroad Company, which built a fourteen-mile railroad to said property. He was the principal stockholder therein, managed its affairs, and selected its officers and directors, who were persons residing in Oregon where the railroad was built. He advanced the money with which to build, and took back stock. In 1922 he sold this stock, which had cost him $365,300 for $252,600.89, sustaining a loss in the amount of $112,699.11, which he sought to carry over to the year 1923 and secure credit therefor in the adjustment of income taxes for that year. Respondent concedes that a loss was sustained for the taxable year 1922, but denies that it resulted from the operation of a regular trade or business.

The issue here arose under subdivisions (a) and (b) of section 204 of the Revenue Act of 1921 (42 Stat. chap. 136, pp. 227, 231, now repealed), the applicable provisions of which are:

"Sec. 204. (a) That as used in this section the term 'net loss' means only net losses resulting from the operation of any trade

or business regularly carried on by the taxpayer (including losses sustained from the sale or other disposition of real estate, machinery, and other capital assets, used in the conduct of such trade or business); and when so resulting means the excess of the deductions allowed by section 214 or 234, as the case may be, over the sum of the following:  *  *  *

"(b) If for any taxable year beginning after December 31, 1920, it appears upon the production of evidence satisfactory to the Commissioner that any taxpayer has sustained a net loss, the amount thereof shall be deducted from the net income of the taxpayer for the succeeding taxable year."

Was petitioner regularly operating a trade or business? If so, the decision of the Board is erroneous, and he is entitled to the benefit of section 204 (b).

At the threshold of this case we are met with the contention that there is substantial evidence in the record to support the findings of fact by the Board, and that hence its decision should be affirmed. There is no dispute here whatever as to the facts. Petitioner was the only witness.

▇▇ This court is given the power under section 1226, title 26, USCA, in reviewing appeals from the Board of Tax Appeals, "to affirm or, if the decision of the board is not in accordance with law, to modify or reverse the decision of the board, with or without remanding the case for a rehearing, as justice may require." If the decision of the Board is not in accordance with law, it is the duty of the appellate court to reverse it. It is true that under the authorities questions of fact are for the Board to determine, but whether its findings of fact are supported by substantial evidence is for the appellate court to determine. Royal Packing Co. v. Commissioner of Internal Revenue (C. C. A.) 22 F.(2d) 536; Lucas v. Mercantile Trust Co. (C. C. A.) 43 F.(2d) 39. The Board here found certain primary facts. It drew therefrom the ultimate conclusion that petitioner was not regularly engaged in trade or business under section 204 (a). This required a construction of section 204 (a) as applied to the facts. The question here is a mixed one of law and fact. Where similar question was raised in Bishoff v. Commissioner of Internal Revenue (C. C. A.) 27 F.(2d) 91, 92, the court said: "Even accepting as conclusive the Board's findings of primary facts, it sometimes happens that the reviewing court must inquire, as on writ of error, into the ultimate fact finding in or-

der correctly to determine whether the decision is validly supported by evidence and therefore is 'in accordance with law.' " This court in H. B. Glover Co. v. Bladine, Collector of Internal Revenue, 34 F.(2d) 605, 607, where objection was made to review because no special findings were requested by plaintiff nor declaration of law asked or motion made for judgment, said: "But we are of the opinion that, though the finding was designated by the court below as a finding of ultimate fact, in substance and effect it was a conclusion of law, or at least was a mixed finding of law and fact, since it involved the construction of the statute above quoted. We think the question sought to be reviewed comes within such cases as Federal, etc., Bank v. L'Herisson [(C. C. A.) 33 F.(2d) 841], supra, and others therein cited, to the effect that the question whether findings of fact support the conclusion of law is reviewable." Of course, we are not concerned with the weight of the evidence before the Board, W. K. Henderson Iron Works & Supply Co. v. Blair, Commissioner of Internal Revenue, 58 App. D. C. 114, 25 F.(2d) 538, but we are concerned with the ultimate conclusion that may be drawn from the facts, and whether or not there is substantial evidence to support such conclusion. That there may be some degree of finality in a finding of fact by an administrative body may be conceded, but such finding cannot take from the courts the power to construe a statute and determine whether it covers such a situation as the facts present. Great Northern Ry. Co. v. Merchant's Elevator Co., 259 U. S. 285, 42 S. Ct. 477, 66 L. Ed. 943. In our judgment, there is nothing in the point urged by respondent that we are concluded by the decision of the Board because of its finding as an ultimate fact that petitioner was not engaged in a trade or business regularly carried on.

▇▇ To avail himself of the deduction provided by section 204 (a) of the Revenue Act of 1921, supra, petitioner must show that the loss resulted from the operation of some trade or business regularly carried on by him. Whether the work which petitioner was doing in connection with his various interests was trade or business under the statute, it was certainly something he was regularly and persistently carrying on. It is not important that we enter into any discussion as to whether the terms "trade" and "business" are used synonymously in the statute. Petitioner here was not engaged in trade within the general acceptance of that term. Was he engaged in business? ·

Respondent contends that petitioner was a mere investor; that the statute is restricted in its application to taxpayers whose income is derived from regular trade with others, such as merchants, manufacturers, and those who have paid taxes on incomes reflected by inventories; that petitioner was not a dealer in securities, but was merely holding securities of corporations and enterprises in which he was interested; that his occupation was guarding his various investments in order to reap a harvest from past sowings; and that the loss was the result of an isolated transaction.

Petitioner does not claim that he was engaged in the railroad business or that he was a dealer in securities. His position is that his occupation was the personal attention given to the management of the various enterprises in which he had investments for the purpose of making those enterprises successful and profitable; that to this he gave his entire time, and was doing a great deal more than merely guarding his investments; that the loss on the sale of the railroad was occasioned in carrying on his general avocation.

The Supreme Court in Flint v. Stone Tracy Co., 220 U. S. 107, 171, 31 S. Ct. 342, 357, 55 L. Ed. 389, Ann. Cas. 1912B, 1312, has interpreted the word "business" in passing on a case under the Corporation Excise Tax Law in such an exceedingly broad way as to cover nearly every range of human endeavor, saying: "It remains to consider whether these corporations are engaged in business. 'Business' is a very comprehensive term and embraces everything about which a person can be employed." The court seems to have restricted this language somewhat in Von Baumbach v. Sargent Land Co., 242 U. S. 503, 516, 37 S. Ct. 201, 204, 61 L. Ed. 460, where it said, with reference to what constitutes business within the meaning of the Corporation Tax Law of August 5, 1909, "that the decision in each instance must depend upon the particular facts before the court."

In McCoach v. Minehill Railway Co., 228 U. S. 295, 306, 33 S. Ct. 419, 424, 57 L. Ed. 842, the court held that, where a railway company had leased its line to another company which operated it exclusively, the former collecting rentals and dividends from investments, it was not engaged in business under the meaning of the Corporation Tax Act. The court said: "In our opinion the mere receipt of income from the property leased (the property being used in business by the lessee, and not by the lessor) and the receipt of interest and dividends from invested funds, bank balances, and the like, and the distribution thereof among the stockholders of the Minehill Company, amount to no more than receiving the ordinary fruits that arise from the ownership of property."

In Edwards, Collector, v. Chile Copper Co., 270 U. S. 452, 455, 456, 46 S. Ct. 345, 346, 70 L. Ed. 678, the Supreme Court, in discussing the exemption "not engaged in business" in the statutes imposing upon domestic corporations organized for profit a tax, "with respect to carrying on or doing business," said: "The activities and situation must be judged as a whole. Looking at them as a whole we see that the plaintiff was a good deal more than a mere conduit for the Chile Exploration Company. It was its brain or at least the efferent nerve without which that company could not move." See, also, United States v. Emery, Bird, Thayer Realty Co., 237 U. S. 28, 35 S. Ct. 499, 59 L. Ed. 825; Argonaut Consolidated Mining Co. v. Anderson, Collector of Internal Revenue (D. C.) 42 F.(2d) 219; Blair, Commissioner of Internal Revenue, v. Wilson Syndicate Trust (C. C. A.) 39 F.(2d) 43.

In Hughes v. Commissioner of Internal Revenue, 38 F.(2d) 755, the Circuit Court of Appeals of the Tenth Circuit indicated that in its judgment the broad interpretation of the term "business" by the Supreme Court in Flint v. Stone Tracy Company was not applicable to the term "trade or business," as used in section 204 (a), and that it was apparent from that section that a narrower construction must be indulged in as to it, and held the section had no application to wage-earners, salaried or professional men; that they employed no capital in their trade or business regularly carried on and suffered no net loss that could be carried over to other years. The court was careful to say that it was concerned only with the meaning of the phrase as used in section 204 (a), which is, of course our situation here. The Board of Tax Appeals has followed Flint v. Stone Tracy Company in its definition of "business." In Schwinn v. Commissioner of Internal Revenue, 9 B. T. A. 1304, 1308, it said: "The chief occupation or business of one, so far as worldly pursuits are concerned, is that which is of principal concern to him, of some permanency in its nature, and on which he chiefly relies for his livelihood or as the means of acquiring wealth, great or small." Again in Ostenberg v. Commissioner of Internal Revenue, 17 B. T. A. 738, 746, "It appears from the evidence that Ostenberg was a capitalist and an investor on a

large scale. He invested in stocks and bonds and in various enterprises which showed a prospect of profit. Such investing and connections with the various enterprises in which he was interested constituted the only business he had, the source of his income, and his means of livelihood."

The statute does not provide that to secure the benefits the taxpayer must be engaged in only one business. It is *any* "trade or business." A party may be engaged in many kinds of business and still be entitled to the benefit of the statute. Oscar K. Eysenbach v. Commissioner of Internal Revenue, 10 B. T. A. 716; E. M. Elliott v. Commissioner of Internal Revenue, 15 B. T. A. 494; Crane v. Commissioner of Internal Revenue, 17 B. T. A. 720. Under the Hughes Case, supra, one-fifth of petitioner's time was devoted to looking after his investments, and the court referred to that as his business of investment banking.

An isolated transaction in itself would not be a business regularly carried on, but it could well be a part of a general business. In Goldberg v. Commissioner of Internal Revenue, 59 App. D. C. 147, 36 F.(2d) 551 (the Court of Appeals of District of Columbia), the question discussed is whether Goldberg was entitled to a deduction within the meaning of section 204 (a) of the Revenue Act of 1921 resulting from loss sustained by the sale of a house and lot. The court found that this was a single, isolated business venture. His regular business of buying and selling real estate was carried on through a corporation. He owned the entire stock of the corporation, but it was a distinct entity, and the business of appellant was not the business of the corporation. The loss sustained in the individual transaction was held to have resulted from a private transaction and not sustained in appellant's regular trade or business.

In Mente v. Eisner (C. C. A.) 266 F. 161, 11 A. L. R. 496, it was held that deductions incurred in trade are limited to losses incurred in the actual business of the taxpayer as distinguished from isolated transactions, and do not include losses sustained through dealings on an exchange by one engaged in another business.

In Pabst v. Lucas, Commissioner of Internal Revenue, 6 B. T. A. 843 (affirmed in 59 App. D. C. 154, 36 F.(2d) 614) petitioner's business was that of pharmaceutical preparations, and an operating owner of and investor in mines. He claimed a loss under section 204 (a) by reason of an investment in a corporation to manufacture porch shades and in the management of which he had no voice. The Board refused to allow it, and the Court of Appeals of the District of Columbia sustained the Board. In Rogers v. United States (Ct. Cl.) 41 F.(2d) 865, 868, the court held that the investment of his professional income by a physician did not in itself constitute a "business regularly carried on."

The Board of Tax Appeals regarded the loss in the sale of the railroad as an isolated transaction, and referred to it as a business in which petitioner had an investment. The railroad corporation was not a separate and distinct enterprise—it was no different than if petitioner had built a wagon road in order to haul lumber out of his timber lands. It was constructed solely as an aid to his timber holding companies, and was a part of the general enterprise. It was merely the alter ego of petitioner. The statute refers particularly to losses "sustained from the sale or other disposition of real estate, machinery, and other capital assets, used in the conduct of such trade or business." The railroad could be regarded as a part of the capital assets. It may be assumed that, when the property was developed, the railroad was no longer needed, so the sale was made.

Much is said in argument as to petitioner being engaged solely in holding the securities of the enterprises in which he was interested, and that he was a mere investor receiving the ordinary returns of ownership. A party may have investments in corporate stock, have no particular occupation, and live on the return of his investments. That would not constitute business under the statute in question. He may, however, take such an active part in the management of the enterprise in which he has investments as to amount to the carrying on of a business. In Ames v. Commissioner of Internal Revenue, 49 F.(2d) 853, this court said that an executor might carry on such activities for the purpose of earning profits as would constitute the doing of business. In Bedell v. Commissioner of Internal Revenue (C. C. A.) 30 F.(2d) 622, 624, the court said: "A trader on an exchange, who makes a living in buying and selling securities or commodities, may be said to carry on a 'business'; a person who frequents brokers' offices, and continually dabbles in real estate is conceivably quite different. Most men who have capital change their investments, and may speculate all the time; we should hardly call this a business, though the line is undoubtedly hard to draw."

We think the line here is not difficult to draw. The business of petitioner was not merely looking after investments or reaping the return of past labor represented thereby. He had an office with a complete organization, and gave personal attention to, and participated in, the management of these various companies and enterprises in which he had the investments, not for the purpose of conserving them merely, but of carrying them on successfully and making them profitable. To this he gave his entire time, receiving no salary, except such as might cover his expenses. His work for these different enterprises was not merely sporadic, but was a continuous and regular carrying on. Petitioner testifies he worked as hard at his new line of work as he did when he was practicing law. His income was the result, not alone of his investments, but also of his labor expended in connection with the management of the companies in which he had such investments. The combination of the two is his vocation.

Can it be said that the numerous investment bankers, underwriters, manufacturers, promoters, and others, who, having large investments in enterprises, give their time and attention to assisting in the management of such enterprises in order to make them successful, are nothing but investors and not engaged in any business regularly carried on? We think not. Whether petitioner's business, viewing his entire activities, be regarded as a general one involving active participation in the supervision of the various companies in which he was interested, or whether he be regarded as carrying on a number of separate kinds of business, among which was the development of the timber holdings, the loss in question occurred in a business regularly carried on.

We are satisfied from a careful survey of the authorities that no decision can be found in favor of respondent's position, except the decision of the Board in this case, which has been practically overruled by its subsequent decisions, to some of which we now refer.

This case was decided June 20, 1929, 16 B. T. A. 1091. September 30, 1929, the decision in Crane v. Commissioner of Internal Revenue, 17 B. T. A. 720, was promulgated. The member of the Board who dissented from the opinion in this case wrote the opinion in that. There is considerable similarity in the two cases. Crane devoted his time to the financing and supervising of mining and railroad corporations. This work took his time,

with the exception of one-half day a week, which he devoted to other corporations, from which he received a salary. His business was carrying on the financing of these corporations, which took the form sometimes of loans and at others of the acquisition of stock. He suffered losses on loans made to one of the corporations, and in the sale of stocks, and asked that his net loss be taken into consideration under section 204 of the Revenue Act of 1921. It was held that petitioner was engaged in business under the statute. On the same day the Board decided the case of Ostenberg et al. v. Commissioner of Internal Revenue, 17 B. T. A. 738. Petitioners' investments there covered a wide range of business. He divided his time between different enterprises such as banks, laundries, farms, in which he had investments. The Board held that during the years 1921 to 1923 Ostenberg was regularly engaged in carrying on a trade or business within the meaning of section 204 (a) of the Revenue Act of 1921. In Baker v. Commissioner of Internal Revenue, 17 B. T. A. 733, petitioner was engaged in the business of organizing and promulgating corporations, and was required as an incident thereto to finance some of them with his personal funds. He suffered a loss by the lending of money to one of them. The Board held that the loss resulted from the operation of a trade or business regularly carried on.

The opinion in Potter v. Commissioner of Internal Revenue, 18 B. T. A. 549, was promulgated in December, 1929. Petitioner there was actively interested as stockholder and managing director in various hotel enterprises which he conducted in his private capacity and later through corporations. In some instances he received a small salary. He sold out his stock in one of the companies at a considerable loss. He claimed the loss as a deductible one. The Board held that his loss was not one in an isolated business transaction, but was an incident of a regular vocation. It points out that the investment and the personal management were clearly related, each dependent on the other, and that in the hotel line of business he was employing in 1923 jointly his time and his capital, and this had been his sole business. It was held that he was carrying on a definite and distinct business constituting a regular vocation, and that in carrying on that business he incurred the loss. Mr. Potter was not merely an investor, but gave to the business in which his funds were invested his personal attention exactly the same as Mr. Washburn did, though Mr. Potter seems to have received salaries. The investment and personal man-

agement existed in both cases, and the two combined produced the income. The only distinction in the case is that Mr. Potter's enterprises related entirely to the hotel business, while Washburn had a diversity of interests, although the loss that is sought to be deducted here occurred entirely out of the timber holding business. However, the statute, as we have pointed out before, in order to confer its benefits, does not require that the taxpayer shall have but one business.

June 2, 1930, the opinion in Anthony v. Commissioner of Internal Revenue, 20 B. T. A. 5, was filed, which can hardly be said to be in harmony with its opinion in the present case. October 8, 1930, the Board filed its decision in the case of Averill v. Commissioner of Internal Revenue, 20 B. T. A. 1196, 1199. In the light of this case we do not see how respondent can claim the Board's decision was right in the present case, for the Averill Case and the present case cannot be satisfactorily reconciled. In that case petitioner was a man of large resources and interested in many varieties of business in Cedar Rapids, Iowa. He maintained an office and employees, and gave his time to looking after different enterprises in which he had investments, some of which were corporations, and others of a personal nature. He sustained a loss by one of these corporations going into receivership and liquidating. The sole issue in that case was whether he had sustained a loss in 1922 which could be carried forward and applied in 1923 under the provisions of section 204 of the Revenue Act of 1921. We quote from that opinion as follows: "To come within the intendment of the statute it is not sufficient that the loss sustained be sustained in a business transaction. It must be sustained in a trade or business regularly carried on by the taxpayer. This Board has, therefore, distinguished between a business regularly carried on and a single, isolated transaction. Such was J. J. Harrington [1 B. T. A. 11], supra. When an activity ceases to be isolated and assumes a continuity and importance that characterize it as an activity regularly engaged in, must necessarily depend on the facts of each particular case. Obviously in every case a business to be regularly carried on must be characterized by a continuing activity in some field of business endeavor. The loss contemplated by the statute is an operating loss, and the party claiming it must be the operator of the trade or business in which the loss occurs. Therefore, a business regularly carried on by the taxpayer means a business regularly operated by the taxpayer on his own behalf." The Board points out that relief to stockholders who suffer loss through liquidation of a corporation must often be denied, for the reason that the same is an investment loss and not an operating loss, and that, upon the sale of stocks or bonds or failure or liquidation of the corporation, the stockholders or bondholders may sustain an operating loss, which is different from the operating loss of the corporation, "and must rest upon the ground that investments in such stocks or bonds is a part of, or incident to, the operation of a trade or business regularly carried on by the taxpayer. It is obvious that an individual may suffer a 'net loss' within the meaning of the statute upon the failure of a corporation or a sale or other disposition of his interest therein." The Board refers directly to its decision in this case as follows: "The line between one who invests in corporations and another whose dealings with corporations is so broad that it may be said to be his trade or business is not one which may be drawn clearly. See J. L. Washburn, 16 B. T. A. 1091; T. I. Crane, supra; W. H. Ostenberg, supra; Elmore L. Potter, supra; E. D. Anthony, 20 B. T. A. 5. *It is difficult to distinguish the decision in the Washburn Case from the later cases.* We believe, however, that the principle upon which these later cases were decided is sound, that they should be followed, and that the instant case falls within them." (Italics ours).

Ever since the decision in this case, as evidenced by the decisions we have cited, the Board has veered away from the position which it took therein, and has come to the conclusion, as stated in the Averill Case, that the later cases are sound, and that the decision in this case cannot be distinguished from those cases. It was stated to us in the oral argument by counsel upon inquiry from the bench that the Averill Case had not been appealed, so respondent evidently accepts that case as expressing the correct doctrine. If the decision there is right, the decision in this case is wrong. We are satisfied that petitioner was engaged in a business regularly carried on within the meaning of section 204 (a) of the Revenue Act of 1921, and entitled, under section 204 (b), to the deduction sought. The decision is therefore reversed and the case remanded to the Board of Tax Appeals for appropriate action in accordance with the views expressed in this opinion.

Reversed and remanded.