### DALTON êt al. v. BOWERS.
#### No. 184.

Circuit Court of Appeals, Second Circuit.
Feb. 15, 1932.

See, also, 53 F.(2d) 373.

George Z. Medalie, U. S. Atty., of New York City (Leon E. Spencer, Asst. U. S. Atty., of New York City, of counsel), for appellant.

Arnold Lichtig and Herbert A. Mossler, both of New York City, for appellees.

Before MANTON, AUGUSTUS N. HAND, and SWAN, Circuit Judges.

MANTON, Circuit Judge.

The appellee Hubert Dalton is an inventor and engineer. In 1917, he organized the Dalton Manufacturing Company, a New York corporation, of which he became the president, treasurer, and a director. He owned all the capital stock, which cost him $395,000, and made unsuccessful efforts to sell the stock to the public. He devoted his time to inventing, and used the Dalton Manufacturing Company to manufacture and market articles of his invention. He was in active charge of the company and its affairs, and from its incorporation until September, 1924, spent the greater part of his time at its office, receiving no compensation for his labors, although he was credited with a salary from 1917 to 1922, inclusive. The company at no time was profitable, and appellee loaned to it from 1920 to 1924 approximately half a million dollars for which it was indebted to him at the time of its dissolution. It manufactured articles of his invention only, but sold some small tools incidental to the articles manufactured. In 1924, it became badly involved financially, owing considerable money. In 1923, in his income tax return, appellee claimed a deduction for bad debts of $157,035.50, owed him by the corporation, claiming that it was unable to meet its obligations and pay its debts to him. In December, 1923 the liabilities exceeded the assets by $173,462, and in that year it ceased operations and took steps to wind up its business. Its assets were disposed of during 1924. The profits of the sale were insufficient to pay its creditors. However, the appellee advanced sufficient funds to the corporation for that purpose. It was not actually dissolved until 1925, when appellee surrendered his stock for cancellation.

In his return for 1925 he claimed a deduction for the loss sustained in his investment of $395,000, paid for the stock of the corporation, pursuant to section 206, subdivisions (a) and (b) of the Revenue Act of 1924 (43 Stat. 260 [26 USCA § 937]). Under subdivision (a) the "net loss" means the excess of the deductions allowed by section 214 (26 USCA § 955 and note) or section 234 (26 USCA § 986) over the gross income, with the following exceptions and limitations: "(1) Deductions otherwise allowed by law not attributable to the operation of a trade or business regularly carried on by the taxpayer shall be allowed only to the extent of the amount of the gross income not derived from such trade or business."

Subdivision (b) provides: "If, for any taxable year, it appears upon the production of evidence satisfactory to the commissioner that any taxpayer has sustained a net loss, the amount thereof shall be allowed as a deduction in computing the net income of the taxpayer for the succeeding taxable year (hereinafter in this section called 'second year') and if such net loss is in excess of such net income (computed without such deduction), the amount of such excess shall be allowed as a deduction in computing the net income for the next succeeding taxable year (hereinafter in this section called 'third year'); the deduction in all cases to be made under regulations prescribed by the commissioner with the approval of the Secretary."

Regulation 65, art. 1621, provides that the net loss may include therein "losses from the sale or other disposition of real estate, machinery, and other capital assets used in the

conduct of such trade or business. * * * In order to be entitled to claim an allowance for a 'net loss' the taxpayer must have suffered an actual net loss in a trade or business during the taxable year."

The questions presented here are, (a) When was the loss sustained? and (b) If in 1924, was it in a business or trade regularly carried on by the appellee?

There is no justification for saying that the business of the corporation was that of the appellee. During the period the appellee dealt with the corporation as an entity. When he paid the debts of the corporation, he drew on his personal account in favor of the corporation's account, and this made the corporation his debtor. Separate tax returns were filed by the corporation and by the appellee. He purchased the capital stock with the intention of disposing of it to the public. His individual time was spent in large part in matters of invention. In his return for 1923, he stated that the corporation ceased operations and took steps to wind up its business; that he advised the trade that no further orders would be accepted and the plant would remain closed. The loss now sought to be deducted was an investment which he made in the corporation and did not occur in the operation of the trade or business regularly carried on by the appellee. Mente v. Eisner, 266 F. 161, 11 A. L. R. 496 (C. C. A. 2); Bedell v. Comm'r, 30 F.(2d) 622 (C. C. A. 2); Goldberg v. Comm'r, 59 App. D. C. 147, 36 F.(2d) 551; Phipps v. Comm'r (C. C. A. 2) 54 F.(2d) 469, Dec. 7, 1931; Anderson v. U. S., 48 F.(2d) 201 (C. C. A. 5).

By the statute, allowing the deductions and carrying over the loss for two years, Congress intended to give relief to persons engaged in an established business for losses incurred during a year of depression in order to equalize taxation in the two succeeding and more profitable years. It was not intended to apply to occasional or isolated losses. Congress had made this distinction. Anderson v. U. S., 48 F.(2d) 201 (C. C. A. 5); Pabst v. Lucas, 59 App. D. C. 154, 36 F.(2d) 614; De Haven Mfg. Co. v. U. S. (D. C.) 31 F.(2d) 999. In Nixon v. Lucas, 42 F.(2d) 833, this court considered a case where three petitioners owned all the stock of a corporation and made a practice of selling in the corporate name. Business was unsuccessful, and the petitioners made loans to the corporation, agreeing to take in return the profits. The company sustained large losses, and the petitioners divided these among themselves and claimed a deduction in their income tax returns. We said that the parties chose to deal with the corporation as a legal person, which they could do if they so desired; that the agreements created contracts with the same obligations as though the corporation had been an individual, and the fact that the partners could at any time take over the assets and deal directly with their customers was not a reason for looking behind the pattern so devised and used; we said further that the losses of the corporation in the particular year were not the losses of the stockholders.

This taxpayer did not regard the business losses of the Dalton Manufacturing Company as his loss. The loss sustained by the appellee which he seeks to charge off is a capital investment loss. The rule is well settled that the corporation will be looked upon as a legal entity. Donnell v. Herring-Hall-Marvin Safe Co., 208 U. S. 267, 28 S. Ct. 288, 52 L. Ed. 481; Klein v. Bd. of Tax Supervisors, 282 U. S. 19, 51 S. Ct. 15, 75 L. Ed. 140, 73 A. L. R. 679. It is only where the legal entity is used to defeat public convenience, protect fraud, or defend crime, that the entity will be disregarded and the corporation be said to be an association of persons. U. S. v. Milwaukee Refrigerator Co. (C. C.) 142 F. 247; Majestic Co. v. Orpheum Circuit, 21 F.(2d) 720 (C. C. A. 8); Boatright v. Steinite Radio Corp., 46 F.(2d) 385 (C. C. A. 10).

Appellee relies principally upon the authority of Washburn v. Commissioner, 51 F.(2d) 949, 953 (C. C. A. 8), where it appeared that a lawyer gave up his practice and devoted all his time to the management of various corporate enterprises which he had formed in his practice and in which he was financially interested. Four of these corporations were timber holding companies which he alone managed. To open up more timber lands, he organized a railroad, advanced the money to build it, and took back most of the stock. In 1922, he sold the stock, sustaining a heavy loss, and sought to deduct it in his 1923 return. He was allowed such deduction, as it was found that his occupation and avocation was the management of his own interests. The court said: "A party may have investments in corporate stock, have no particular occupation, and live on the return of his investments. That would not constitute business under the statute in question [section 204, Revenue Act 1921 (42 Stat. 231) now section 206, Revenue Act 1924 (26 USCA § 937 and note)]. He may, however, take such an active part in the manage-

ment of the enterprise in which he has investments as to amount to the carrying on of a business."

The building of the railroad was not an isolated transaction. It was constructed as an aid to the timber companies, and was part of the general enterprise; "it was merely the alter ego of the petitioner." He maintained a completely organized office, and gave his personal attention to the management of the various companies, receiving no salary except such as to cover the actual expenses involved. His income was the result not alone of his investments, but also of the labor expended by him in the development of the companies. The combination of the two constituted his avocation. These facts, perhaps, distinguished the case from the instant one. At bar, it is clear no business is shown except that conducted by the Dalton Manufacturing Company. The taxpayer had an independent business, to wit, inventing. It must be borne in mind that the appellee here advanced $395,000, not to his own business, but to be applied to the purchase of stock in the corporation, and he chose to deal with the public through the corporation. The loss he thus sustained was not a loss incurred in the regular occupation of a trade or business.

Moreover, it appears that the loss which the appellee now seeks to deduct was incurred when the stock proved worthless. This did not occur in 1925 when the corporation was dissolved. There was a net deficit at the end of 1924 of $714,344. All of the assets had been sold in that year. Appellee had ascertained the stock to be worthless prior to the end of 1924, and if any deduction was permissible, it should have been made in 1924. The Commissioner therefore was correct in holding that the stock was not ascertained to be worthless in 1925. Darling v. Comm'r, 49 F.(2d) 111 (C. C. A. 4); Deeds v. Comm'r, 47 F.(2d) 695 (C. C. A. 6); De Loss v. Comm'r, 28 F.(2d) 803 (C. C. A. 2); Royal Packing Co. v. Comm'r, 22 F.(2d) 536 (C. C. A. 9).

Judgment reversed.