### MARSCH v. COMMISSIONER OF INTERNAL REVENUE.

### No. 7028.

Circuit Court of Appeals, Seventh Circuit.

Feb. 24, 1940.

Elden McFarland, of Washington, D. C., and J. F. Riordan and E. J. Quinn, both of Chicago, Ill., for petitioner.

Samuel O. Clark, Jr., Asst. Atty. Gen., and Sewall Key, J. Louis Monarch, S. Dee Hanson, J. P. Wenchel and Charles E. Lowery, Sp. Assts. to Atty. Gen., for respondent.

Before EVANS, SPARKS, and KERNER, Circuit Judges.

KERNER, Circuit Judge.

This appeal is from a decision of the Board of Tax Appeals approving the action of the respondent, who found that petitioner was liable for a deficiency income tax for the year 1932. The deficiency resulted from the disallowance by the respondent of a deduction for losses sustained in 1931. There is no dispute as to the amount or as to the sustaining of the losses. Our question is whether the net losses which the petitioner sustained in 1931 are net losses attributable to a trade or business regularly carried on by him within the meaning of Sec. 117(a) (1) of the Revenue Act of 1928, c. 852, 45 Stat. 791, 26 U.S.C.A. Int.Rev.Acts (made applicable by Sec. 117(d) of the Act of 1932, 26 U.S.C.A. Int.Rev.Acts) which reads as follows: "Deductions otherwise allowed by law not attributable to the operation of a trade or business regularly carried on by the taxpayer shall be allowed only to the

extent of the amount of the gross income not derived from such trade or business."

If the net losses are attributable to a business regularly carried on by him, the decision must be reversed.

Petitioner, when about eighteen years old, first worked as a farm hand, then as a laborer on a railroad and in the iron mines, then as a buyer and seller of horses. Later, in 1905, he entered the contracting business, which developed extensively: it was incorporated and carried on as John Marsch, Inc. During 1931 and 1932 he was the president and general manager of this corporation, his time being largely devoted to the management and conduct of the business. It was from this corporation that he received his chief source of revenue.

Throughout 1931 and in prior years he personally bought and sold and was engaged in breeding and training horses in Kentucky, at times having as many as thirty. His racing activities were carried on in at least seven states. He employed a trainer and operated his racing stable as a business for the gain and profit he hoped to realize, and personally decided where and when and what horses he would enter in a race.

Petitioner was never a licensed real estate broker; he bought and sold real estate only on his own account. He made his first purchase of real estate in 1905. From 1905 to 1913 he made 12 purchases of real estate and one sale, one of the purchases being the Millie Mine in Michigan, consisting of eighty acres of land containing iron ore. From 1913 to 1922 he made no purchases and no sales. In 1923 he made two purchases of real estate in Chicago and one sale. In 1924 he made one purchase and one sale, and in 1925 one sale. In 1926 he made three purchases; two in 1927 and two in 1928. In 1929 he made one purchase and three sales. During 1930 and 1931 he made two sales each year, one of the sales in 1931 being the Millie Mine. All of these purchases were primarily for the purpose of resale at a profit.

Each year during the period from 1905 to 1932 he personally inspected the properties before buying; supervised the making of repairs and improvements; paid the taxes, assessments and interest on mortgages; spent an average of two hours a day in the management of the properties; carried on all manner of negotiations for the sale of the properties; and had agents collect the rents.

In preparing his tax return for the years 1931 and 1932, the petitioner stated that his occupation or business was that of contractor. In the same tax years petitioner has taken depreciation deductions on the real estate properties in question, and the Commissioner has allowed the same. In this connection it is noted that depreciation deductions are allowed on the theory that they constitute business expenses connected with the property used in the business of the taxpayer. It is also to be noted that the Commissioner acquiesced in a deduction of a net loss sustained by the petitioner in 1931 from his operation of a racing stable.

There was no conflict in the testimony and upon these facts the Board found that the petitioner was a real estate investor and not a dealer regularly engaged in the business of buying and selling real estate.

The words "business regularly carried on by the taxpayer" are not defined by the statute. In such a case, the findings of the Board are not conclusive, and where the ultimate finding is a conclusion of law or at least a determination of a mixed question of law and fact, it is subject to judicial review, Washburn v. Commissioner, 8 Cir., 51 F.2d 949; Hughes v. Commissioner, 10 Cir., 38 F.2d 755; Dalton v. Bowers, 2 Cir., 56 F.2d 16; United States v. Peabody Co., 6 Cir., 104 F.2d 267, 269, and Bogardus v. Commissioner, 302 U.S. 34, 39, 58 S.Ct. 61, 82 L.Ed. 32, and it becomes the duty of the court to decide whether the correct rule of law has been applied to the facts found. In a concurring opinion in Deputy, etc., v. DuPont, 60 S.Ct. 363, 369, 84 L.Ed. —— rendered by our Supreme Court on January 8, 1940, Mr. Justice Frankfurter said: "What the activities of a taxpayer are is an issue for determination by triers of fact. Whether such activities constitute a 'trade or business' as conceived by § 23(a) of the Revenue Act of 1928, 45 Stat. 791, 799, 26 U.S.C.A. Int.Rev.Acts, is open for determination here * * *."

For the petitioner to avail himself of the deductions, it must be made to appear that the losses resulted from the operations of a business regularly carried on by him.

The respondent concedes that a person may be engaged in more than one trade or business and still be entitled to net loss deductions, provided his activities therein are of such frequent occurrence as to be

regarded of themselves as a business regularly carried on by the person claiming the deductions, and not merely isolated or occasional business transactions or investments, but he insists that in the instant case the petitioner's activities were merely isolated investments and not such as to have amounted to his being regularly engaged in carrying on a real estate business.

In Flint v. Stone Tracy Co., 220 U.S. 107, 171, 31 S.Ct. 342, 55 L.Ed. 389, Ann. Cas. 1912B, 1312, the court defined the word "business" as being a very comprehensive term embracing everything about which a person can be employed, and as that which occupies the time, attention and labor of men for the purpose of a livelihood or profit. And in the case of Kales v. Commissioner, 6 Cir., 101 F.2d 35, page 37, 122 A.L.R. 211, the court said: "That ordinarily a person is engaged in business when he devotes his time and energy to the buying and selling of securities there can be little doubt, and the Supreme Court has, inferentially at least, recognized it."

In Miller v. Commissioner, 9 Cir., 102 F.2d 476, 479, it was said: "The courts have held that where a man takes an active part in the management of an enterprise in which he has investments his activities amount to the carrying on of a trade or business, but they have drawn the line between such cases and those where the activities of the party are merely looking after investments and doing only what is necessary from an investment point of view. Bedell v. Commissioner, 2 Cir., 1929, 30 F.2d 622; Washburn v. Commissioner, 8 Cir., 1931, 51 F.2d 949; Foss v. Commissioner, 1 Cir., 1935, 75 F.2d 326. In the Foss case it was said: 'The line comes between those who take the position of passive investors, doing only what is necessary from an investment point of view, and those who associate themselves actively in the enterprises in which they are financially interested and devote a substantial part of their time to that work as a matter of business.'"

With this reasoning we agree.

In our case there is no question but that the petitioner carried on his real estate activities in good faith and for the purpose of making a profit; that he personally carried on all of the negotiations for purchase and sale; that he visited and inspected the properties, not only those he owned, but also those he contemplated purchasing; that he insured the properties,

paid taxes and assessments thereon, paid interest on mortgages, received the rentals, collected insurance on properties destroyed by fire, and personally supervised extensive repairs. These activities were regular and recurrent and not those of a mere passive investor, and show a related continuity of a dealer regularly engaged in the business of buying and selling real estate. Dalton v. Bowers, supra; Kales v. Commissioner, supra; and Commissioner v. Boeing, 9 Cir., 106 F.2d 305.

We conclude that the Board's conclusion of law that the petitioner was not entitled to carry forward as a net loss the losses sustained in his real estate transactions is erroneous, and the decision is reversed.

Reversed and remanded.